# Patricia B. Russo

### v.

# Burton White

Record No. 900496

January 11, 1991

Present: All the Justices

*G. David Nixon (King, Fulghum, Snead, Nixon & Grimes*, on briefs), for appellant.
*Harry F. Bosen, Jr.* for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this tort action, the plaintiff seeks recovery in damages for alleged intentional infliction of emotional distress, independent of any physical injury and unaccompanied by any physical impact. On appeal, we determine whether the trial court erred in sustaining the defendant's demurrer.

We will consider the plaintiff's allegations according to "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox* v. *Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

In an amended motion for judgment, appellant Patricia B. Russo sought to recover against appellee Burton White for his allegedly outrageous conduct. The plaintiff asserted that she is a single parent who lives with her teen-age daughter. She alleged that in the Spring of 1987 she "went on a date with defendant" and thereafter "did not date defendant again."

According to the pleading, plaintiff began receiving numerous "hang-up" calls from April through June, 1987. She asserted that in August 1987, defendant was convicted under Code § 18.2-429 of " 'causing telephone to ring with intent to annoy,' " a misdemeanor.

Plaintiff further alleged that the same type of calls resumed in the Fall of 1987 and she began "keeping a log." Between November 25, 1987 and January 28, 1988, she received 340 "hang-up" calls, according to the plaintiff. Continuing, she alleged that she contacted the police in January 1988, and, with the aid of the police and the telephone company, "defendant was observed making 15 phone calls to plaintiff in quick succession from a telephone booth." She asserted that defendant was served with 15 warrants for committing the same crime for which he had been convicted during the previous August. The charges, she noted, "were taken under advisement."

The plaintiff also alleged that some of the calls were made at times which made "it apparent that defendant was watching plaintiff's house." According to plaintiff, defendant's conduct caused her "extreme emotional distress" because "not knowing defendant very well, she was not . . . aware of his proclivity for violence." She asserted that this "consideration" weighed heavily on her, "due to her vulnerability as a single parent, and since she must leave her minor daughter alone at times."

Concluding, plaintiff alleged that, as a proximate result of defendant's "intentional acts," she suffered "severe emotional distress." This resulted, she asserted, in "nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities which might necessitate plaintiff leaving her daughter at home, [and] lack of concentration at work to the point where she received a reprimand."

In a demurrer to the amended motion, defendant contended that plaintiff failed to sufficiently set forth "either the legal elements or factual basis" to support a claim of "intentional infliction of emotional harm." Upon consideration of argument of

counsel, the trial court sustained the demurrer. We awarded the plaintiff this appeal from the January 1990 judgment order dismissing the action.

■ In *Womack* v. *Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), this Court joined a growing number of jurisdictions which explicitly recognized the existence of an independent tort referred to as "the intentional infliction of emotional distress," sometimes called the tort of "outrage." *See* annot., *Modern Status of Intentional Infliction of Mental Distress as Independent Tort; "Outrage."* 38 A.L.R.4th 998 (1985). Academics take credit for the development of this modern tort, which was finally defined in the Restatement (Second) of Torts § 46 (1965) (hereinafter Restatement). Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum. L. Rev. 42, 42-43 (1982).

■ The tort, however, "differs from traditional intentional torts in an important respect: it provides no clear definition of the prohibited conduct." *Id.* at 51. Assault, battery, and false imprisonment "describe specific forms of behavior," but the term "outrageous" "does not objectively describe an act or series of acts; rather, it represents an evaluation of behavior. The concept thus fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate that conduct." *Id.* Indeed, we have said recently that such torts are "not favored" in the law. *Ruth* v. *Fletcher*, 237 Va. 366, 373, 377 S.E.2d 412, 415 (1989).

■ Nevertheless, in an effort to establish meaningful standards for adjudication of such claims, we adopted a four-pronged approach in *Womack*, patterned after the Restatement definition. We stated that emotional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe. 215 Va. at 342, 210 S.E.2d at 148.

In this case, the defendant does not dispute that the plaintiff's pleading sufficiently alleges facts to comply with the first and third prongs of *Womack*. Thus, we will address the remaining two prongs, keeping in mind that the trial court must initially deter-

mine whether the facts alleged will support a finding of both outrageousness and severe emotional distress. *See* Restatement comments h and j; *Ruth*, 237 Va. at 368, 377 S.E.2d at 413.

 Under the second prong, it is insufficient for a defendant to have "acted with an intent which is tortious or even criminal." Restatement comment d. Even if a defendant "has intended to inflict emotional distress," or his conduct can be "characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," the requirement of the second prong has not been satisfied. *Id.* "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The plaintiff contends that for "White to call her over a two month period an average of 5.6 times per day is intolerable and offends any sense of decency and morality in a civilized society." Conceding that defendant did not speak during the calls, plaintiff argues that they nonetheless were "threatening" because of "their frequency and the fact that White was calling a single parent with a young child who had extremely limited contact with him so as not to be able to judge White's proclivity for violence." She contends that, given the persistence with which defendant "harassed" her with "these threatening calls, it was more than reasonable for her to feel that White was likely to escalate the matter to the point of violence." Thus, according to plaintiff, defendant's conduct constituted intentional infliction of emotional distress.

We will agree with the plaintiff and assume, without deciding, that defendant's conduct rose to the level of outrageousness required to support the cause of action. Consequently, we will focus on the fourth prong of *Womack* and decide whether the plaintiff's emotional distress was "severe."

 The term "emotional distress" travels under many labels, such as, "mental suffering, mental anguish, mental or nervous shock . . . . It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Restatement comment j. But liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it. *Id.*

■ Here, plaintiff alleged that she suffered "severe emotional distress" and "extreme emotional distress." But, even on demurrer, the court is not bound by such conclusory allegations when the issue involves, as here, a mixed question of law and fact. This is not a negligence case where, according to Rule 3:16(b), an allegation of "negligence" is sufficient without specifying the particulars. In the present claim, "a plaintiff must allege all facts necessary to establish" the cause of action. *Ely* v. *Whitlock*, 238 Va. 670, 677, 385 S.E.2d 893, 897 (1989) (trial court erred in failing to sustain demurrer to count in motion for judgment alleging intentional infliction of emotional distress).

■ The plaintiff has alleged that she was nervous, could not sleep, experienced stress and "its physical symptoms," withdrew from activities, and was unable to concentrate at work. There is no claim, for example, that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income. Consequently, we conclude that the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it.

Therefore, we hold that the trial court correctly sustained the demurrer, and the judgment of dismissal will be

*Affirmed.*

JUSTICE HASSELL, with whom JUSTICE STEPHENSON and JUSTICE LACY join, dissenting.

I dissent because I believe that Ms. Russo properly pled a cause of action for the tort of intentional infliction of emotional distress and, therefore, she should not be deprived of her opportunity to prove her allegations before a jury.

Even though the tort of intentional infliction of emotional distress is a disfavored cause of action, it remains a viable cause of action until it is abolished. This cause of action is certainly appropriate under the facts and circumstances of this case in light of White's alleged despicable conduct. According to the allegations in the motion for judgment, which we must deem true at this stage of the proceedings, White intentionally embarked upon a course of conduct designed to harass and frighten Russo, a single

parent who lived with her 14-year-old daughter. He placed in excess of 340 "hang-up" calls to her home and was arrested and convicted of causing a "telephone to ring with intent to annoy" in violation of Code § 18.2-429.

White's alleged conduct was so outrageous in character, and so extreme in degree, as to transcend all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Without question, his alleged conduct was absurd, flagrant, intemperate, intentional, malicious, harassing, intimidating, annoying, childish, misguided, and reprehensible. White's conduct was beyond the "bounds of decency" and should not be tolerated in a civilized community.

I disagree with the majority's conclusion that Russo's amended motion for judgment fails because she did not allege facts indicating extreme emotional distress which is "so severe that no reasonable person could be expected to endure it."* Russo alleges in paragraph 12 of her amended motion: "As a proximate result of defendant's intentional acts, plaintiff suffered severe emotional distress resulting in nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities which might necessitate plaintiff leaving her daughter at home, lack of concentration at work to the point where she received a reprimand." Certainly, no reasonable person could or should be expected to endure the injuries endured by Russo.

I disagree with the majority's reliance upon *Ely* v. *Whitlock*, 238 Va. 670, 385 S.E.2d 893 (1989). In *Ely*, we held that the trial court erred because it did not sustain a demurrer to a count in a motion for judgment alleging intentional infliction of emotional distress. There, the plaintiffs alleged:

"[t]he statements and conduct of Rae H. Ely, as set forth in Counts I, II, and III of this Motion for Judgment were made and carried out by her intentionally and/or recklessly, were outrageous and intolerable and offend against generally accepted standards of decency and morality, and have proximately caused severe emotional distress to your plaintiff."

---

* Not only does the majority create a new requirement that has not heretofore been articulated by this Court, but it is a requirement that I believe Russo has met. The majority relies upon the Restatement (Second) of Torts § 46 comment j (1965) and adopts its requirement that "liability arises only when emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it."

*Id.* at 677, 385 S.E.2d at 897. We stated that the plaintiffs in *Ely* failed to allege that the defendant's acts were undertaken "for the specific purpose of inflicting emotional distress upon them, and that [the defendant] intended her specific conduct and knew or should have known that emotional distress would likely result." *Id.* Russo's amended motion for judgment does not contain these deficiencies.

Finally, I disagree with the majority's conclusion that Russo's motion for judgment contains "no claim . . . that she had any objective physical injury caused by stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." Russo alleged, as the majority acknowledges, that she suffered "stress and its physical symptoms." This allegation, in my opinion, is sufficient at the demurrer stage of the proceedings. Furthermore, in certain instances, physical injury is not an element required to establish the tort of intentional infliction of emotional distress. *Naccash* v. *Burger*, 223 Va. 406, 415-16, 290 S.E.2d 825, 830-31 (1982); *Womack* v. *Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). Russo should have been given the opportunity to present medical testimony at trial regarding the nature and extent of her emotional and physical injury. I am not aware of any decision, before this case, wherein we have required a plaintiff to plead in a motion for judgment that "she sought medical attention" or that "she was confined at home or in a hospital." Accordingly, I would reverse the judgment of the trial court and remand the case for a jury trial.