# Mary Kay Pierce

### v.

# Antonio T. Caday, M.D.

Record No. 911846

September 18, 1992

Present: All the Justices

*Robert M. Galumbeck (Galumbeck, Simmons & Reasor*, on briefs), for appellant.

*William W. Eskridge (Penn, Stuart, Eskridge & Jones*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this action by a patient against her physician for the physician's alleged failure to assure nondisclosure of confidential information, we consider whether the trial court properly dismissed the action at the pleading stage of the proceeding.

Appellant Mary Kay Pierce filed a motion for judgment against appellee Antonio T. Caday, M.D., and one Michael Wade seeking

compensatory damages against both, severally and not jointly. The plaintiff nonsuited the action against Wade after Caday filed a motion alleging misjoinder of parties defendant.

Caday also filed a motion to dismiss asserting that the plaintiff failed to give him written notice of the claim prior to suit, as required by Code § 8.01-581.2(A) of the Virginia Medical Malpractice Act (the Act). Caday also filed a demurrer contending that the motion for judgment was insufficient in law because it failed to state a cause of action.

Upon consideration of argument of counsel, the trial court sustained both the motion to dismiss and the demurrer. Thereafter, the court denied the plaintiff's motion for leave to file an amended motion for judgment. We awarded the plaintiff this appeal from the trial court's September 1991 order dismissing the action.

On appeal, the plaintiff's assignments of error raise three issues: Whether the trial court erred in ruling that the plaintiff was required to file a notice of claim under the Act; whether the trial court erred in sustaining the demurrer; and whether the trial court erred in refusing to allow the plaintiff to amend her motion for judgment after the demurrer was sustained.

The case turns on the legal sufficiency of the allegations of the motion for judgment, there being no dispute on appeal that the notice, if required, was not given. Thus, we will assume the truth of all material facts, not conclusions of law, that are properly pleaded.

The plaintiff alleges that she was an employee of Buchanan General Hospital and "worked in close proximity to" Wade in the course of her employ at the hospital. She asserts that on "numerous occasions" Wade sexually harassed her in spite of her repeated protests about his behavior.

She alleges that, on January 25, 1989, she consulted Dr. Caday due to the stress and anxiety caused by Wade's conduct. She asserts that she "requested a mild sedative to assist her in coping with the emotional distress caused by" Wade.

The plaintiff alleges that upon arriving at Caday's office, she "informed him that the matter was highly confidential and requested that the nurse then present leave the room." She further alleges that Caday "assured" her "that all matters discussed would remain confidential."

"Relying on his representations," the plaintiff asserts, she informed Caday about "the problems she had encountered with"

Wade. She alleges that Caday granted her "a medical excuse from work due to her emotional distress caused by" Wade.

The plaintiff asserts that upon returning to work two days later, on January 27, she learned that one Kathy Keene, an employee of Caday and of the hospital, "had discussed her meeting and the cause of her meeting with several other employees at" the hospital.

The plaintiff alleges that "Caday failed to control his employees and allowed his employees, as his agents, to breach the confidentiality inherent to his position." She further alleges that, as a result of the actions of Wade and Caday, she "has suffered severe emotional distress and physical harm, including inability to sleep, problems with ulcers and other stress related disabilities."

Concluding, the plaintiff seeks a money judgment against Caday "for breach of confid[entiality] and implied contract of confid[entiality]." The plaintiff sought damages against Wade for "assault and battery."

The trial court, in a letter opinion, decided that the "rules governing medical malpractice apply in this situation" and that the dismissal motion should be sustained because the plaintiff filed suit before notice was given to Caday. The court also sustained the demurrer "because the Motion for Judgment does not properly plead a cause of action for negligent infliction of emotional distress."

Additionally, the court rejected the plaintiff's contention that the motion for judgment sets forth "a contract action." The court determined: "The pleadings, as a whole, indicate . . . that this is an action in tort, not contract. The Plaintiff's initial contact with the Defendant was for medical services. Confidentiality is imposed in the doctor/patient relationship without any agreement."

On appeal, the plaintiff argues that the trial court erroneously sustained the motion to dismiss because she was not required by the Act to file a written notice of medical malpractice claim. She contends that her claim is one "of breach of contract" and "not a claim for relief based on negligent provision of health care."

Conceding that Caday is a "health care provider" within the meaning of the Act, she argues that "the act complained of is not that of malpractice." "Malpractice" is defined in the Act as "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Code § 8.01-581.1(5). The plaintiff contends that the "contract with Caday, i.e., that the matters related to him in confidence would not

be revealed, created a contract between the parties . . . and the breach of that contract was not a tort.''

Elaborating, the plaintiff says her claim ''is not grounded in improper services rendered, services not rendered, treatment, or lack of treatment. Nor did her complaint arise out of the time period involving her diagnosis, care, treatment or confinement.'' Rather, the plaintiff argues, her ''complaint arises from unauthorized and impermissible dissemination of medical records following the termination of the doctor/patient relationship.''

The plaintiff's contentions necessitate an analysis of the physician-patient privilege as it affects the factual allegations of this motion for judgment, which contains the conclusion of law of the pleader that a ''breach of confidentiality and implied contract of confidentiality'' has occurred.

The common law did not recognize a physician-patient privilege. In Virginia, no such privilege exists in a criminal prosecution. *Gibson* v. *Commonwealth*, 216 Va. 412, 414, 219 S.E.2d 845, 847 (1975), *cert. denied*, 425 U.S. 994 (1976). But Virginia has enacted a qualified statutory privilege expressly confined to civil proceedings. Code § 8.01-399 (except with patient's consent, physician not required to testify in civil action respecting information acquired in treating patient; disclosure may be required under certain circumstances).

The General Assembly has recognized the existence of the privilege in other enactments and has provided protection for physicians who must disclose certain confidential information. *See, e.g.,* Code §§ 37.1-225 through -233 (disclosure allowed of certain patient information to third party payors by professionals, including physicians); Code § 54.1-2966 (physician who reports to governmental agency responsible for air safety the disability or infirmity in person licensed to operate aircraft ''shall not be liable for any civil damages resulting from such reporting''); Code § 54.1-2966.1 (physician who reports to Department of Motor Vehicles disability or infirmity of any person licensed to operate motor vehicle which physician believes affects person's ability to operate vehicle ''shall not be deemed to have violated the physician-patient privilege''); Code § 54.1-2967 (physician who treats person for wound inflicted by certain weapons required to report person's name and address to law enforcement authorities, physician making report ''or participating in a judicial proceeding resulting therefrom shall be immune from

any civil liability''); Code § 54.1-2968 (physician allowed to identify to appropriate government agency, to assist such agency in planning or conduct of services for the handicapped, any person under the age of 22 who has physical or mental handicapping condition); Code § 63.1-248.11 (physician-patient privilege not applicable in any legal proceeding resulting from filing report of child abuse); and, Code § 65.2-607 (injured employee claiming workers' compensation required to submit to examination by physician designated by employer, no fact communicated to such physician ''shall be privileged''). *See also* Rule 4:10(c)(2) (party who submits to independent medical examination waives privilege under certain circumstances).

While the General Assembly implicitly has recognized the existence of a qualified physician-patient privilege in Virginia, the only explicit statutory pronouncement of the privilege is an evidentiary rule restricted to testimony in a civil action. Code § 8.01-399, *supra*. *See* Code § 8.01-400.2 (rule applied to counselors, social workers, and psychologists). In the present case, the plaintiff seeks to fashion a cause of action for recovery in damages out of what has thus far been recognized in Virginia as merely a rule of evidence.

■ Some courts in other jurisdictions, however, have recognized the nonstatutory right of a patient to recover damages from a physician for unauthorized disclosure of confidential communications concerning the patient; other courts have refused to create such a cause of action. See Judy E. Zelin, Annotation, *Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient*, 48 A.L.R.4th 668 (1986); Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426 (1982).

In view of the General Assembly's repeated recognition of the privilege, we easily could adopt the view that a civil remedy lies in favor of a patient against a physician if the physician, or anyone under the physician's control, without the patient's consent makes an extra-judicial disclosure of confidential information obtained in the course of the physician-patient relationship. *See Alberts* v. *Devine*, 395 Mass. 59, 65-66, 479 N.E.2d 113, 118, *cert. denied sub nom. Carroll* v. *Alberts*, 474 U.S. 1013-14 (1985). We followed such a course when we recognized the cause of action for emotional distress, unaccompanied by physical injury, in *Womack* v. *Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974).

But it is unnecessary for us today to recognize expressly the existence of such a cause of action in Virginia in order to decide this case. Indeed, the issue has not been raised or debated, the parties presuming that such a cause of action is available. Therefore, we will assume without deciding that such an action will lie.

The question then becomes whether the cause of action set forth in this motion for judgment sounds in contract, as the plaintiff contends, or in tort, as the defendant contends. We agree with the trial court and hold that it sounds in tort.

■ A physician who undertakes treatment of a patient impliedly represents that the physician possesses that degree of skill and diligence in the diagnosis and treatment of the patient employed by a reasonably prudent practitioner in the physician's field of practice or specialty. *Brown* v. *Koulizakis*, 229 Va. 524, 532, 331 S.E.2d 440, 445 (1985). Failure to comply with the standard of care is actionable and is ''malpractice'' because it is ''any tort based on health care,'' within the meaning of the Act. Code § 8.01-581.1(5).

■ A thorough, accurate medical history furnished by the patient is an indispensable component of medical treatment. In other words, receipt of that confidential information is ''an inseparable part of the health care,'' *see Hagan* v. *Antonio*, 240 Va. 347, 352, 397 S.E.2d 810, 812 (1990); it is vital to the proper discharge of the general duty imposed upon practitioners.

Upon receipt of that information, the physician impliedly promises not to violate the confidence. Because the duty to honor the implied promise of confidentiality is but another component of the treatment rendered, the breach of that duty (which we have assumed is actionable) should be judged like the breach of the general duty. Thus, as with a violation of the standard of care generally, a breach of the duty of confidentiality, ''resulting in damages, gives rise to a cause of action sounding in tort against the physician.'' *Alberts* v. *Devine*, 395 Mass. at 69, 479 N.E.2d at 120.

■ The plaintiff unsuccessfully attempts to package her allegations as some sort of special contract, express or implied, to avoid the requirements of the Act. As we have said, the physician-patient relationship imposes a duty of confidentiality upon the physician. In this case, there was no ''special'' agreement of nondisclosure requiring the physician to do that which he was already bound to do under the law. *Cf. Glisson* v. *Loxley*, 235 Va. 62, 68, 366 S.E.2d 68, 72 (1988) (physician under no duty independent of special contract to perform a specified type of operation).

Consequently, because the alleged breach of duty of confidentiality sounds in tort, it is "malpractice" for the reason that it is "any tort based on health care," under the Act. Code § 8.01-581.1(5). It follows that the trial court properly sustained the motion to dismiss because notice of claim was not given before suit was filed in violation of Code § 8.01-581.2(A) (notice required prior to commencing action for "malpractice").

Likewise, it follows that the trial court properly sustained the demurrer because the motion for judgment does not set forth a contract action and the motion for judgment fails to properly plead a cause of action for infliction of emotional distress, an issue the plaintiff does not even address on appeal. See *Russo* v. *White*, 241 Va. 23, 27-28, 400 S.E.2d 160, 162-63 (1991). And, we conclude that the trial court did not abuse its discretion in refusing to allow the plaintiff to amend the motion for judgment.

Therefore, the trial court's judgment will be

*Affirmed.*