## CIRCUIT COURT OF THE CITY OF RICHMOND

Sharon Dawkins

v.

Richmond Community Hospital
and Van Archer

Case No. LU-2341

Willie E. Stone

v.

Richmond Community Hospital
and Van Archer

Case No. LU-2340

May 5, 1993

BY JUDGE T. J. MARKOW

These cases came before the court for argument on demurrer and special pleas. Since the cases share common issues, they will be discussed together.

Count I alleges negligent selection and supervision against Richmond Community Hospital (hereinafter "RCH") only; RCH has demurred to Count I in both cases. Count II alleges malpractice against both RCH and Archer; RCH has demurred to Count II in both cases, and Archer has demurred to Count II only in the *Stone* case. Count III alleges intentional infliction of emotional distress against both defendants; RCH has demurred to Count III in both cases, and so has Archer. The disposition of the demurrers which follows makes it unnecessary to discuss the special pleas also filed by RCH.

The facts stated here are those alleged in the Motions for Judgment. The cases arise from the following fact scenario. Stone is Dawkins'

boyfriend and the father of her child. The two plaintiffs were enrolled in a substance abuse program at RCH, and Van Archer was their counselor. Archer allegedly used confidences gathered during his treatment of Stone to gain an "advantage" with Dawkins, ultimately engaging in a sexual relationship with her.

## I. *Negligent Selection and Supervision (Against RCH Only)*

Factually, it is questionable whether defendant RCH's conduct as alleged could amount to negligent supervision. Plaintiff alleges, in rather conclusory fashion, that RCH failed to investigate rumors of Archer's misconduct, and that RCH "knew or should have known" about a number of deficiencies in Archer's performance. However, plaintiff also alleges that the rumors had surfaced some time in February of 1990, and that Archer was terminated the first week in April, when the hospital became aware of the relationship between Archer and Dawkins. Plaintiffs obviously conclude that this response was inadequate, but they do not present their factual basis for that conclusion.

Even more troublesome to plaintiff's first count is the lack of authority for a cause of action for negligent supervision in Virginia in the first place. In the case of *C. & P. Telephone v. Dowdy*, 235 Va. 55 (1988), "the dispositive question [was] whether the common law of Virginia recognizes a tort of negligent supervision of an employee by the employer and its managerial personnel." *Id.* at 56. Plaintiff in that case suffered from spastic colitis and was frequently absent from work. He contended that bouts of the illness were brought on by undue stress from his supervisors. C. & P. contended that plaintiff's work habits were unprofessional and that he decreased the morale of his coworkers. After being terminated, plaintiff brought a cause of action for negligent supervision, in which he:

> contend[ed] recovery should be allowed because "it was established that the defendants were on full notice that the stress and pressure that they were applying to the plaintiff were directly and adversely affecting his physical condition," and a jury should be permitted to conclude "this to be unreasonable conduct on the part of the employer."

*Id.* at 60. The Supreme Court disagreed, stating that "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will

not create one here." *Id.* at 61. The Court made no indication of other "circumstances" which could give rise to such an action. In September of the same year, the Supreme Court was again faced with a assertion of negligent supervision, under more egregious circumstances, in the case of *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206 (1988), which involved the sexual assault of a child by a church employee. The Court did not address the merits of the claim, "because appellant failed to submit any authority either on brief or in oral argument concerning negligent supervision." *Id.* at 208. Thus, counsel in neither *Victory Tabernacle* nor *C. & P. Telephone* presented any authority recognizing a cause of action for negligent supervision. According to counsel at oral argument in this case, the fact that the substance abuse program involved herein had to be licensed imposed a "higher duty" to supervise on the part of the hospital. However, counsel presented no authority for that proposition, nor has the court found any in its own search. Thus, the negligent supervision portion of Count I fails to state a cause of action.

The other claim in plaintiff's first count is of negligent hiring, a cause of action which is recognized in Virginia. Negligent hiring "conditions liability on the employer's knowledge that the employee's past *actions* strongly suggest that he is unfit for a job which involves an unreasonable risk of harm to others." *Simmons v. Baltimore Orioles, Inc.,* 712 F. Supp. 79, 81 (W.D. Va. 1989) (citing *Victory Tabernacle,* 372 S.E.2d at 394) (emphasis in original). In the instant cases, plaintiffs allege that RCH failed to adequately investigate Archer's background, but they do not allege any facts available to RCH which would have indicated the type of behavior complained of or prevented RCH from offering Archer the job. As such, plaintiffs have not stated a claim for negligent hiring. The demurrer will be sustained as to all of Count I.

## II. *Malpractice (Against Both Defendants)*

As to RCH, its only liability arises through respondeat superior. The actions by Archer of which plaintiffs complain are his sexual relationship with Dawkins and his misuse of Stone's confidences. There is no allegation that these intentional acts were within the scope of Archer's employment, in furtherance of the business of RCH, or that they were ratified by RCH. Plaintiffs do allege that Archer failed to respond adequately to their psychological needs. This seems to sound in neg-

ligence, but it is a conclusion. The only facts as to the inadequacies of Archer's treatment refer to the intentional acts mentioned above. Without facts alleging acts by Archer committed in the scope of his employment, or ratified by RCH, the malpractice claim against RCH cannot stand.

Archer demurs to this count only in the *Stone* case. Stone alleges that Archer breached Stone's confidences, given during the course of the counselor-patient relationship, to pursue a professionally improper sexual relationship with Dawkins. The Supreme Court of Virginia recently decided a case which provides some insight into this area. In *Pierce v. Caday*, 244 Va. 285, 422 S.E.2d 371 (1992), a patient brought an action against her physician, claiming he failed to protect the confidentiality of matters revealed to him in counselling sessions. The Supreme Court was called upon to decide whether such a claim fell within the ambit of the Medical Malpractice Act and required notice under its provisions. The Court answered that question in the affirmative, which dictated the dismissal of the plaintiff's action because notice had not been given pursuant to the Act. However, the Court also discussed the question of whether Virginia recognizes a cause of action in tort for breach of confidentiality by a physician. The Court assumed without deciding that such an action would lie. Although this is not an affirmative recognition by our Supreme Court of the cause of action, this court believes that such an action is viable in Virginia.

The *Pierce* court cited numerous statutes providing protection for physicians who must reveal certain types of otherwise confidential information. *Id.* at 373 (citing Va. Code §§ 37.1–225 to 233, 54.1–2966, 54.1–2966.1, 54.1–2967, 54.1–2968, 63.1–248.11, 65.2–607, and Rule 4:10(c)(2)). The court also looked to the evidentiary rule which provides that a physician not be required to testify in a civil action regarding information gleaned from treating a patient, except with the consent of the patient, or under certain special circumstances. *Id.* at 373 (citing Va. Code § 8.01–399). This rule applies to counselors, social workers, and psychologists as well as physicians. *Id.* (citing Va. Code § 8.01–400.2). The General Assembly's recognition of situations where physician-patient privilege does not apply, and its protection of physicians and counselors when revealing confidences in those instances, implies a duty of nondisclosure as its underlying basis. The *Pierce* court recognized, and common sense tells us, that in order to render complete care, a physician or counselor must be aware of all

the pertinent facts in a patient's history and of all present circumstances which impact his or her condition. Ensuring confidentiality fosters frank communication on the part of the patient, for he or she knows that the information he gives the doctor or counselor will not be revealed.

Actions for malpractice allege that a health care provider breached the applicable standard of care. "Because the duty to honor the implied promise of confidentiality is but another component of the treatment rendered, the breach of that duty (which we have assumed is actionable) should be judged like the breach of the general duty." *Id.* at 374. What the Supreme Court "assumed without deciding" seems to this court to be the only logical conclusion. Breach of confidentiality by a licensed counselor, resulting in damages, may form the basis for a malpractice action. Therefore, Stone's claims in the instant case are sufficient to withstand demurrer.

### III. *Intentional Infliction of Emotional Distress (Against Both Defendants)*

As to RCH, plaintiffs have the identical vicarious liability problems mentioned in the discussion to Count II, above. There are no allegations that Archer's actions were in the scope of his employment or in furtherance of RCH's business. In fact, the allegations that Archer's conduct was "extreme, outrageous and intolerable for a person acting in the position of a counselor to a patient" take his behavior outside the scope of his employment. Additionally, the fact that RCH fired Archer when it became aware of the conduct seems to negate the possibility of ratification by RCH. As such, RCH's demurrer to Count III will be sustained.

As to Archer's demurrer, the vicarious liability issue obviously does not arise. The alleged sexual relationship between Archer and Dawkins is at the heart of Dawkins' claim. Counsel suggested that Stone's claim must be dismissed, inasmuch as Stone seeks recovery for Archer's conduct towards Dawkins, and is merely a third-party "bystander." However, Stone's motion for judgment alleges that Archer violated Stone's own confidentiality and revealed to Dawkins information disclosed by Stone in counselling sessions. As to the sufficiency of the pleadings, the Supreme Court's most recent case on this subject, *Russo v. White*, 241 Va. 23 (1991), explains that:

> [t]he term "emotional distress" travels under many labels, such as, "mental suffering, mental anguish, mental or nervous shock . . . . It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Restatement, comment j. But liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it. *Id.*

*Russo v. White*, 241 Va. at 27.

Paragraph 36 of Stone's motion for judgment alleges that "Archer's conduct was the direct and proximate cause of severe emotional distress for the plaintiff, which resulted in bodily harm to the plaintiff." This allegation is more conclusory than factual, and does not relate underlying facts to support the claim. As in *Russo*, the court is not bound, for purposes of demurrer, by conclusions of "severe emotional distress." Facts must be pleaded which constitute such severity. Count II, which is incorporated by reference into this count, alleges that Stone suffered "great anxiety, stress and guilt," and that his relationship with Dawkins was "adversely affected." In *Russo*, the plaintiff alleged that she "was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" as a result of 340 hang-up phone calls from the defendant over a two-month period. *Id.* at 28. The Supreme Court therein concluded that "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.* In the instant case, Stone's mention of medical expenses and lost wages does not escalate the emotional distress to the level required by our Supreme Court, in light of the facts underlying his claim. Breach of confidentiality by Archer, if proven, is certainly improper and, as discussed above, states a claim for malpractice. However, the crux of Stone's complaint is that Archer violated his confidences in order to gain an advantage with Dawkins. While this intention is far from commendable, it does suggest that Archer did not act for the purpose of harming or harassing Stone. Archer's use of confidences was less of an action directed against Stone, and more of a means to an end in Archer's pursuit of a sexual relationship with Dawkins. Archer's actions are not sufficiently egregious as against Stone to sustain this claim, and are

adequately addressed in the malpractice count. Therefore, Archer's demurrer to Count III, in the *Stone* case, is sustained.

As to Dawkins' claim, while most of the language in her motion for judgment is identical to that in Stone's, the facts underlying her claim raise it to a higher level of egregiousness. In her case, Archer's actions were specifically directed toward her, done for the purpose of having a sexual relationship with her. Archer allegedly revealed to Dawkins facts divulged by Stone during counselling, including Stone's infidelity. If proven, such blatant abuse of a position of trust to gain personal advantage and in this case sexual advantage with a psychologically vulnerable client is sufficiently outrageous and intolerable in civilized society to withstand demurrer. Therefore, Archer's demurrer to Count III in the *Dawkins* case is overruled.

In summary, RCH's demurrer as to all counts is sustained, and it is no longer a defendant in this case. Archer's demurrer is overruled as to Count II, sustained as to Count III in the *Stone* case, and overruled as to Count III in the *Dawkins* case. What now remains in these actions is the claim by Stone against Archer for malpractice and the claims by Dawkins against Archer for malpractice, intentional infliction of emotional distress, and battery.