995 F.2d 1062
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert J. GORDON; Ursula J. Gordon, Plaintiffs-Appellants,
v.
GESTETNER CORPORATION, A New York Corporation, Defendant-Appellee.
 No. 92-2112.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: May 28, 1993
Decided: June 11, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-92-679-A)
 Blaine P. Friedlander, Sr., Falls Church, Virginia, for Appellant.
 William T. Freyvogel, Adams, Porter & Radigan, LTD., McLean, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert J. and Ursula J. Gordon appeal the district court's order dismissing their complaint in this diversity action for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The Gordons each claimed intentional infliction of emotional distress and Robert added a claim of tortious breach of contract against the Gestetner Corporation, his former employer. During a hearing on the Defendant's motion, the district court dismissed all claims. We affirm.
 
 
 2
 Robert Gordon was employed by the Defendant, an office equipment company, for thirty-five years and spent the last twenty-three years as branch manager of its Washington, D.C. office in Northern Virginia. His wife's parents lived with the couple, but died in May 1991. Plaintiffs each allege emotional distress as a result of the Defendant's dismissing Robert in June 1991* after a three-year campaign to force him out of the company while knowing that his in-laws were terminally ill, that his son suffered from Hodgkin's Disease, and that Robert would be due several large commissions. The couple seeks compensatory and punitive damages.
 
 
 3
 The district court granted the Defendant's motion to dismiss, ruling from the bench that both claims of emotional distress were deficient because the Defendant's dismissal of Robert at the time his in-laws were dying was not sufficiently outrageous conduct and that Virginia does not entertain a cause of action for tortious breach of contract. The Gordons timely appealed, arguing that the district court acted arbitrarily and capriciously in preventing their novel claims from proceeding before a jury.
 
 
 4
 Jurisdiction in this diversity action is pursuant to 28 U.S.C.A. § 1332 (West Supp. 1992), and Virginia law applies. Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938). A complaint is not dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts supporting his claim for relief, with all claims construed in favor of the non-moving party and the allegations of the complaint taken as true. Martin Marietta Corp. v. INTELSAT, 978 F.2d 140, 142 (4th Cir. 1992). Appellate courts review dismissals for failure to state a claim de novo. Id.
 
 
 5
 Under Virginia law, a plaintiff must establish four elements to recover under a claim of intentional infliction of emotional distress where there is no physical injury: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in view of generally accepted standards of decency and morality; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974). The second element of outrageousness is a question of law for resolution by the court, and only becomes a jury question when reasonable persons could disagree. Id.; see Gaiters v. Lynn, 831 F.2d 51, 53 (4th Cir. 1987).
 
 
 6
 For purposes of this motion, the Defendant argued that Robert failed to meet the second and fourth criteria and that his wife failed to meet the first, second, and fourth criteria. The district judge relied on the absence of the second criteria in dismissing both claims. He ruled that loss of a job or failing to receive a promotion, while "traumatic and unfortunate," do not constitute outrageous conduct that would offend decency and be deemed intolerable in a civilized society.
 
 
 7
 Robert alleged that the Defendant pressured and ultimately fired him even though it knew his in-laws were terminally ill, his son was sick, and Robert was in line for significant commissions after securing three large contracts. Robert claimed that as a result of his dismissal he suffered Bell's Palsy, shock, fear, insomnia, weight gain, anxiety, humiliation, depression, and anger, which required medical care. Ursula alleged that Robert was employed by the Defendant before they married and that her life "was intertwined with the triumphs and bad times of the Gestetner Corporation and[she] knew well the many officers, agents, and employees of Gestetner." She alleged that the willful and malicious conduct of the Defendant's agents recklessly disregarded the probability of causing her emotional distress. She alleged that the Defendant's actions caused her anger, abdominal cramps, anxiety, depression, internal bleeding, a spastic colon, numbness in a leg, crying spells, fear, headaches, insomnia, severe nausea, nervousness, shock, weight gain, and the need to attend grievance classes to abate the pain. Robert sought one million dollars in compensatory damages and one million dollars in punitive damages while Ursula sought $100,000 in compensatory damages and one million dollars in punitive damages.
 
 
 8
 We hold that the district court did not err when it ruled that this dismissal from employment, with sick family members and the loss of potentially large sales commissions, did not rise to the level of intolerable conduct violating generally accepted standards of decency and morality. The Virginia Supreme Court has limited this tort in line with the Restatement (Second) of Torts § 46 (1965), to prevent frivolous lawsuits and litigation "where only bad manners and mere hurt feelings are involved." Womack, 210 S.E.2d at 148. Intentional, malicious, or criminal conduct is not sufficient; the outrageous conduct must go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community. Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). The state court has limited the application of this tort and denies recovery"in a doubtful case." Ruth v. Fletcher, 377 S.E.2d 412, 415 (Va. 1989).
 
 
 9
 Robert's dismissal as the Defendant's branch manager cannot be characterized as indecent, atrocious, or utterly intolerable in Virginia in this decade. See Richardson v. Krucko & Fries, 966 F.2d 153, 158 (4th Cir. 1992) (emotional distress claim against third-party preempted by federal labor law because discharged employee needed to show, at a minimum, that unfair labor practice fulfilled second Womack element); Reid v. Sears, Roebuck & Co., 790 F.2d 453, 462 (6th Cir. 1986) (discharge of at-will employee not outrageous conduct); Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 749 n.5 (E.D. Va. 1991) (likelihood state law claim of intentional infliction of emotional distress would fail because dismissal of pregnant employee does not satisfy second prong of Womack); Owens v. Ashland Oil, Inc., 708 F. Supp. 757, 760 (W.D. Va. 1989) (dismissal of ill employee neither extreme nor outrageous).
 
 
 10
 Plaintiffs cite no Virginia statute or case permitting a cause of action for tortious breach of an employment contract. Virginia follows the common law rule that contracts for services of an indefinite duration carry a rebuttable presumption that such agreements are terminable at will. Addison v. Amalgamated Clothing & Textile Workers Union, 372 S.E.2d 403, 405 (Va. 1988); Miller v. SEVAMP, Inc., 362 S.E.2d 915, 917 (Va. 1987). The complaint specifically waived any action under contract.
 
 
 11
 In response to the Defendant's motion to dismiss, Plaintiffs filed copies of two letters from the Defendant to Robert, written in 1988, in which Robert alleged that his at-will employment relationship was transformed into one requiring that he could only be fired for just cause. One letter is irrelevant to this appeal. The other letter, dated August 8, 1988, informed Robert that if he met his quota over the next three months then he "will stay as Branch Manager," but that if the quotas are not met both parties had agreed that Robert "will be asked to be released as Branch Manager." This letter does not encompass a complete agreement as to wages and terms of employment, and the "will stay" language suggests a contract for an indefinite duration. We hold that the district court did not err in finding that Robert was an at-will employee at the time of his dismissal and, therefore, no action for breach of contract or for Robert's designated claim of tortious breach of contract is available.
 
 
 12
 Accordingly, we affirm the district court's order granting the Defendant's motion to dismiss this action. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 The Defendant states in its motion by way of clarification that Robert was relieved of his position as branch manager on May 13, 1991 and, when Robert declined offers of reassignment and a separation package, he was formally dismissed in a June 13, 1991 letter