## CIRCUIT COURT OF LOUDOUN COUNTY

Adam Landis et al.

v.

James F. O'Connor et al.

February 28, 1994

Case No. (Law) 14528

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Plaintiffs' Motion to Reconsider the decision announced from the bench on February 7, 1994, denying their Motion for Leave to File a late Answer to the Defendants' counterclaim, the Defendants' motion for a default judgment on their counterclaim, and the Defendants' motion for summary judgment on the Plaintiffs' motion for judgment.

After consideration of the abbreviated argument of counsel on February 15, 1994, and the memoranda filed by counsel, the Court:

(1) denies the Plaintiffs' Motion to Reconsider;

(2) grants the Defendants' Motion for Default Judgment as to Count I (Breach of Contract) of their counterclaim;

(3) denies the Defendants' Motion for Default Judgment as to the other counts of their counterclaim; and

(4) denies the Defendants' Motion for Summary Judgment on the Plaintiffs' Motion for Judgment.

The Plaintiffs filed their motion for leave to file a late answer to the counterclaim over six months after it was due to have been filed. The proffered answer merely admits or denies certain allegations of the counterclaim; therefore, the Plaintiffs argue that the Defendants have not been prejudiced in preparing for the trial to commence on March 24, 1994. The Plaintiffs also argue that the Defendants waived their right to a default judgment by agreeing to the setting of a trial date on July 2, 1993; the order was entered August 9, 1993.

The issues for trial have never been previously framed by the Court. The Defendants' asking for a lengthy trial to be scheduled because of the counterclaim does not set the issues to be litigated at trial. There is always the possibility that issues in a trial can be reduced by a default or summary judgment before trial based on matters occurring before the trial date is set.

Perhaps the Court should have pointed out to counsel in July, 1993, that the Plaintiffs had not filed a responsive pleading to the counterclaim. If it did, then the Defendants would have felt that the Court was helping out the Plaintiffs. It is obvious that the Rules are expected to be followed by all litigants. It could have been the Defendants' trial strategy when the case was set for trial to wait and see if the Plaintiffs would ever realize they had not responded to the counterclaim. If the Plaintiffs never did file a responsive pleading, then the Defendants could have asked for a default judgment at trial.

The Defendants had just as much of a right to wait and rely on the Plaintiffs' being in default in seeking a default judgment as the Plaintiffs have to fail to file responsive pleadings as required by Virginia procedure and rely on an argument that the Defendants waived their right to a default judgment merely by scheduling the case for trial. The parties realize that if the Defendants had moved for a default judgment when the case was set for trial, or even shortly thereafter, then the Court upon motion of the Plaintiffs would most probably have allowed them leave to file a late answer.

The Motion to Reconsider is denied. The Plaintiffs are in default as to the counterclaim. However, when the Defendants decided to seek a default judgment, they decided to rely on their pleadings as opposed to what the proof might have been at trial.

If the Defendants seek a default judgment on the counterclaim, then the counterclaim must allege the substantive elements of the particular theory of liability and sufficient facts to support each element. Therefore, the court must examine the facts alleged in the counterclaim in support of the various counts.

As to Count I, the Defendants have alleged sufficient facts for breach of a lease agreement by denying quiet enjoyment. However, because the Defendants elected not to reference a particular writing as being the lease, it is impossible to determine that the lease referred to in Count I is the same lease on which the Plaintiffs have sued in their motion for judgment.

The Defendants are not entitled to any declaratory judgment relief in Count I under Virginia Code § 8.01–184 *et seq.* because they have not alleged facts consistent with such relief and have not prayed for such relief.

Count II absolutely fails to allege any facts that would support the legal conclusion that the Plaintiffs owed a fiduciary duty to the Defendants. There can be no judgment for a breach of a duty that is not supported by the allegations. There will be no default judgment for breach of fiduciary duty.

The facts alleged in support of the fraud claim in Count II are based on the failure of the Plaintiffs to disclose to the Defendants that the utilities charged to the leasehold also included the utilities of another tenant. The allegations of paragraph C–9 of the counterclaim clearly state that the "Defendants knew the utilities, which were charged to the Defendants' leasehold also included the utility services to another tenant." Because the defendants knew, they were not defrauded.

I am not persuaded by the Defendants' argument that paragraph C–9 is a pleader's error which is obvious from the other allegations of the counterclaim. If the Defendants decided to wait over six months before moving for default judgment, then I feel that they should be granted relief based strictly on the allegations as set forth in the counterclaim. As pleaded, the Defendants are not entitled to a default judgment for fraud in Count II.

There can be no default judgment on the alleged intentional infliction of emotional distress in Count III of the counterclaim because the conclusory allegation of "severe emotional distress" is not supported by the facts alleged. *Russo v. White*, 241 Va. 23, 27–28 (1991). The nature of the alleged acts of the Plaintiffs may satisfy the "outrageous and intolerable" conduct element, but the nature of the act does not show the severity of the distress to the Defendants. The only injury alleged is a forced move by Ann M. O'Connor from her home resulting in personal property damage in excess of $20.00 (see paragraph C–35). Severe distress is not supported by the facts alleged. There will be no default judgment in Count III for intentional infliction of emotional distress.

Count IV appears to be an attempt to allege a conspiracy to injure reputation, trade, business or profession under Virginia Code § 18.2–499 *et seq.* An essential element of such a conspiracy is that it was done for the purpose of willful and malicious injury. As to the acts

alleged which appear to be considered as part of the conspiracy, the only thing alleged to have been malicious is a malicious purpose of simple vengeance over a disagreement with Defendant James O'Connor (see paragraph C–18). There is no allegation that any of the acts of conspiracy were done for the purpose of maliciously injuring anyone's reputation, trade, business or profession. The allegations of a specific intention to create emotional distress or a singular purpose of harassing in paragraph C–19 have nothing to do with reputation, trade, business or profession. Finally, the allegations of conspiracy are not consistent as to which of the Defendants were damaged as a result. No default judgment for conspiracy in Count IV will be granted.

There is no Count V in the counterclaim.

Count VI appears to be a tort claim for a trespass occurring on or about March, 1993, when "Defendant" Gnam (he is actually a plaintiff) did enter the premises "without leave of any Defendant." (See paragraph C–40.) The Plaintiffs, at least by inference, are alleged to be owners of the premises which they leased to the Defendants. There is no allegation that the Defendants had an exclusive right to possession or that the Plaintiffs were required to obtain consent from the Defendants before coming on the premises. There is no allegation that the Plaintiffs had no lawful authority or right to come upon the premises. Therefore, no default judgment in trespass in Count VI will be granted.

Count VII attempts to allege a cause of action for negligence. The allegations of paragraph C–41 that the Plaintiffs had a duty of care to either establish different utility measuring systems or disclose the unitary billing system to allow for set-offs and credits are conclusions of law and fact. No facts are alleged to support such a duty. The obligations and duties of the parties arise out of their contractual arrangement. It appears to be a negligent performance of a contract argument. Virginia does not recognize such a tort. Further, the Defendants allege in paragraph C–43 that the duty was breached by carelessly shutting off the water and sewer and carelessly allowing other tenants to consume Defendants' utilities. The first breach does not logically follow from the duties alleged. No facts are alleged to give rise to the duty or duties of care that the Plaintiffs are alleged to have breached. The facts alleged do not state a cause of action for negligence in Count VII; and, therefore, no default judgment thereon will be granted.

The cause of action for gross negligence in Count VIII fails completely because the two acts alleged in paragraph C–45 to be gross

negligence are stated as being done "deliberately" and "intentionally." Intentional acts are beyond acts constituting gross negligence. Further, no facts are alleged to support the conclusory assertion in the same paragraph that the Plaintiffs had a "duty of economic safety of another person's property." No default judgment will be granted for gross negligence in Count VIII.

There is a common misconception that Virginia is a "notice" pleading state. It is not. For an excellent explanation of the Virginia standard, see Note, *The Specificity of Pleading in Modern Civil Practice: Addressing Common Misconceptions*, 25 U. Rich. L. Rev. 135 (1990). Therefore, any argument by the Defendants that the Plaintiffs were "on notice" because of the counterclaim of the Defendant's claims is not persuasive.

The Defendants' motion for summary judgment on the Plaintiffs' motion for judgment is denied because it is impossible to ascertain from the counterclaim that the written lease on which the Plaintiffs have sued is the same lease agreement on which the Defendants' counterclaim is based.

This case will go to trial on March 24, 1994, at 9:00 a.m. on the motion for judgment and the damages, if any, to which the Defendants may be entitled for breach of the lease agreement by the denial of quiet enjoyment.