## CIRCUIT COURT OF FAIRFAX COUNTY

Patricia Curtis

v.

Fairfax Hospital et al.

Case No. (Law) 129754

Patricia Curtis

v.

INOVA Health System Foundation, Inc.

Case No. (Law) 129755

August 15, 1994

BY JUDGE THOMAS A. FORTKORT

The matter comes before the Court on the Demurrer and Plea in Bar of co-defendants Fairfax Hospital, INOVA Health System Foundation, Inc., and Nancy Perrelli to the Motion for Judgment of plaintiff Patricia Curtis. After hearing oral argument, the court ruled on the Plea in Bar and took the Demurrer under advisement. Upon further review of the pertinent issues, the court overrules the co-defendants' Demurrer.

The events giving rise to this litigation are detailed in the parties' memoranda. Curtis sought and received prenatal care at Fairfax Hospital beginning in July 1988. During the course of this treatment, Curtis communicated personal medical information to employees of Fairfax Hospital. Curtis gave birth to a baby girl on February 13, 1989. The child suffered a cardiorespiratory arrest shortly after birth and died on June 7, 1989. Curtis filed a claim under Virginia's Medical Malpractice Act against Fairfax Hospital and the treating nurse, Linda Beckett, alleging wrongful death of the infant. The panel rendered its opinion and, subsequently, Curtis filed a Motion for Judgment in Fairfax Circuit Court, styled

*Patricia Curtis v. Fairfax Hospital et al.*, At Law No. 110693. In 1994 Curtis brought the present action, charging that defendant Perrelli, an employee of Fairfax Hospital, with consent of Fairfax Hospital's counsel, disseminated Curtis' confidential medical information to Linda Beckett and her counsel. The pending Motion for Judgment asserts that Fairfax Hospital and the other defendants conspired to use this confidential information to gain an advantage in the underlying malpractice action and to otherwise harass and disturb Curtis.

Five counts are set forth in Curtis' Motion for Judgment: Count I: Tortious Interference with Contract; Count II: Conspiracy to Breach Contract; Count III: Conspiracy to Commit Malpractice; Count IV: Conspiracy to Commit Breach of Fiduciary Duty; and Count V: A claim for punitive damages. From the bench the court overruled the co-defendants' Plea in Bar, stating that the statute of limitations could not be raised without the benefit of an initial evidentiary hearing to determine the date upon which Curtis discovered or reasonably should have discovered the unauthorized dissemination of her confidential medical records.

As a preliminary matter, the court must first note that the co-defendants have raised several issues which are unsuitable for adjudication at this stage in the proceedings. These arguments include the assertion that Curtis waived any physician-patient privilege by the mere filing of the wrongful death action. Text of Court Ruling on Motion to Compel, October 29, 1993. Further, the co-defendants argue, any disclosure of such information in the context of a "judicial proceeding" is absolutely privileged under the rule of *Donohoe Construction Co. v. Mount Vernon Assoc.*, 235 Va. 531 (1988), and accordingly, no civil liability could attach against these co-defendants. Regardless of the potential viability of these arguments at a later date, it is well-settled in Virginia that a demurrer merely tests the legal sufficiency of the pleadings and admits all facts well-pleaded and all inferences properly drawn from the facts alleged. *Fun v. Virginia Military Institute*, 245 Va. 206 (1989). As such, this court is precluded from considering the foregoing arguments presently as they are outside the scope of review on demurrer.

Turning now to the Demurrer, the essence of the co-defendants' argument is that a cause of action does not exist in this Commonwealth against a health care provider for unauthorized disclosure of a patient's confiden-

tial medical information. *Pierce v. Caday*, 244 Va. 285, 289-91 (1992). In *Pierce*, the Virginia Supreme Court considered the case of a plaintiff who related to her doctor that she was experiencing sexual harassment by a co-worker. Soon thereafter, plaintiff discovered that her discussion with the doctor had not remained private and that the doctor's employees had revealed the information to third parties. She brought suit against the doctor for "breach of confidentiality and implied contract of confidentiality." *Pierce*, 244 Va. at 288. In resolving the question of whether this claim stated a cause of action, the *Pierce* court noted that while such an action had not been previously recognized by the common law, the General Assembly had repeatedly recognized the existence of a qualified physician-patient privilege in various pronouncements.[2] Particularly, the Virginia Supreme Court focused on an evidentiary rule which provides that a physician will not be compelled to disclose confidential patient information absent patient consent, except in certain circumstances. Code of Virginia § 8.01-399.

However, it was not necessary for the *Pierce* court to formally recognize the existence of such a cause of action because the parties neither raised the issue nor debated it. *Pierce*, 244 Va. 291. Thus, assuming a cause of action would lie, the next inquiry made by the *Pierce* court was whether such an action would sound in tort or contract. Acknowledging that receipt of a patient's medical history is "an inseparable part of the health care," the Court found that the safeguarding of that information was a crucial component of the general duty owed by a physician to a patient. *Id.*, citing *Hagan v. Antonio*, 240 Va. 347, 352 (1990). The Court explained, "because the duty to honor the implied promise of confidentiality is but another component of the treatment rendered, the breach of that duty (which we have assumed is actionable) should be judged like the breach of the general duty." *Pierce* at 291. *See also Alberts v. Devine*, 479 N.E.2d 113, cert. denied sub nom. *Carroll v. Alberts*, 474 U.S. 1013 (1985).

A recent circuit court decision, using the *Pierce* holding, found a cause of action in the case of a psychiatrist who was treating a woman and her

---

[2] The Virginia Code allows qualified disclosures of patient information in certain instances, *inter alia*: Code of Virginia §§ 37.1-225 through 37.1-233 (disclosure to third party payors); Code § 54.1-2966 (disclosure to government air safety agency disability potentially affecting operation of aircraft); Code § 54.1-2966.1 (disclosure to DMV of persons with disability potentially affecting operation of motor vehicle); and Code § 65.2-607 (disclosure of information received through examination of injured employee claiming workers' compensation).

boyfriend in independent counseling sessions. *Dawkins v. Richmond Community Hospital*, 30 Va. Cir. 377 (Richmond 1993). The boyfriend charged that the doctor had used confidential information gleaned from the boyfriend's sessions to ingratiate himself with the woman and cultivate a sexual relationship with her. The Richmond Circuit Court in *Dawkins* found that, despite the Supreme Court's refusal to expressly find a cause of action, such an action for "breach of confidentiality by a licensed counselor, resulting in damages" would lie, sounding in tort, under the circumstances. *Dawkins*, 30 Va. Cir. at 381. The circuit court offered its rationale:

> The *Pierce* court recognized, and common sense tells us, that in order to render complete care, a physician or counselor must be aware of all the pertinent facts in a patient's history and of all the present circumstances which impact his or her condition. Ensuring confidentiality fosters frank communication on the part of the patient, for he or she knows that the information he gives the doctor or counselor will not be revealed.

*Id.*, at 380-81.

Another basis for the co-defendants demurrer is that Curtis has alleged no actionable damages since she seeks damages related solely to emotional distress. *Russo v. White*, 241 Va. 23, 28 (1991). The plaintiff in *Russo*, a single mother with a young daughter, dated defendant once and then received numerous hangup calls from him within a short period of time. In considering whether the plaintiff could recover for emotional distress resulting from the above-described behavior, a non-tactile tort, the Virginia Supreme Court applied the four-prong test first elucidated in *Womack v. Eldridge*. The *Womack* analysis requires a plaintiff to allege that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Womack v. Eldridge*, 215 Va. 338, 342 (1974). The severity of the distress was held to be insufficient in *Russo* when, "there [was] no claim, for example, that [plaintiff] had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Russo*, 241 Va. at 28. Despite the unquestionable applicability of the *Womack* analysis to allegations of intentional infliction of emotional distress, the analysis is inapposite here, where Curtis seeks damages for an independent tort.

While the co-defendants are technically correct in their declaration that torts seeking to recover for emotional distress are not favored in the law, *Ruth v. Fletcher*, 237 Va. 366, 372-373 (1989), Curtis is not seeking recovery for infliction of emotional distress. Curtis has sufficiently pled a separate tort, conspiracy to commit malpractice, and emotional distress is part of the injury resulting from that tort. *Howard v. Alexandria Hospital*, 245 Va. 346, 429 S.E.2d 22 (1993). *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343 (1982). "We have approved the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, where a cause of action existed independently of such harm." *Sea-Land*, 224 Va. at 354.

Another ground of the co-defendants' Demurrer is that plaintiff fails to plead a cause of action for tortious interference with contract. To survive demurrer on this count, Virginia law dictates that allegations must be made which support a finding that (1) a valid contractual relationship exists, (2) knowledge of that relationship by the alleged tortfeasor, (3) intentional interference with that relationship inducing or causing a breach of the relationship, and (4) resultant damage to the claimant. *CaterCorp v. Catering Concepts*, 246 Va. 22, 27-28 (1993). This court opines that the first prong of this test is not satisfied by the allegations currently contained in Curtis' Motions for Judgment. Virginia has repeatedly remarked on its unwillingness to find that a contract for medical care exists between doctor and patient. *Pierce v. Caday*; *Glisson v. Loxley*, 235 Va. 62 (1988).

The Virginia Supreme Court in *Pierce* has already rejected that notion by refusing to accept the *Pierce* plaintiff's "[unsuccessful] attempts to package her allegations as some sort of special contract, express or implied, to avoid the requirements of the [Virginia Medical Malpractice] Act." *Pierce*, 244 Va. at 291. Drawing from their decision in *Glisson v. Loxley*, the *Pierce* court found that "there was no 'special' agreement of nondisclosure requiring the physician to do that which he was already bound to do under the law." *Id.*, citing *Glisson*, 235 Va. at 68. To the extent that this court could construe a contract arising out of this relationship, it would be an oral promise by the physician to provide treatment and by the patient to provide compensation. The contract would not evidence an agreement of the type propounded by Curtis, that the physician impliedly agrees not to disseminate the patient's confidential medical information. Therefore, the Motions for Judgment fail to state a claim for tortious interference with contract.

Curtis' three conspiracy counts are also the subject of the co-defendants' Demurrer. The court has already ruled that Curtis' claim for conspiracy to commit malpractice is sufficiently alleged and will withstand demurrer. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 369, 402 (1985); *Werth v. Fire Adjust. Bureau*, 160 Va. 845, 855, cert. denied, 290 U.S. 659 (1933). *Hechler* directs that to survive demurrer, a plaintiff must allege "an unlawful act or an unlawful purpose." *Hechler*, 230 Va. at 402. Thus, this court must look to the underlying claim to determine whether Curtis' Motion for Judgment states a cause of action for these civil conspiracies. In evaluating the claim asserting conspiracy to breach contract, this court has previously determined that Curtis has failed to sufficiently allege the existence of a valid contract between the parties. Therefore, this count will not withstand demurrer. As for the claim of conspiracy to breach a fiduciary duty, this claim allegedly arises from the contractual relationship entered into by Curtis and Fairfax Hospital. This claim must fall as well, for this court has already determined that Virginia does not recognize such a contract. Although Curtis cites case law from other jurisdictions suggesting that a physician's duty to refrain from disseminating confidential information is somehow encompassed in a contract between patient and physician, this court must adhere to the dictates of the Virginia Supreme Court, which instruct that the duty not to disseminate confidential patient information arises from tort, and not contract principles.

This Court recognizes the general harm of releasing such confidential records and the potential damage that conduct might cause. Further, although Fairfax Hospital has been arguing from the position that it owns the records in question, this Court would like to emphasize that the Hospital is merely a repository for such patient records. Therefore, the Court finds that a cause of action exists for such unauthorized disclosure. Accordingly, the Court overrules the Demurrer with respect to Count III and sustains the Demurrer with respect to Counts I, II, and IV.