## CIRCUIT COURT OF ALBEMARLE COUNTY

Katherine Almy

v.

John Grisham, Jr.,
Alan Swanson,
Donna Swanson,
David Liebman,
and Cina L. Wong

July 20, 2001

Case No. (Law) CL00-8427

BY JUDGE EDWARD L. HOGSHIRE

Responding to Katherine Almy's Motion for Judgment ("MFJ"), John Grisham, Jr., Alan Swanson, Donna Swanson, David Liebman, and Cina Wong (collectively, "Defendants") filed demurrers and motions to dismiss on all counts and pleaded the statute of limitation on the three *ex contractu* claims, each of which is addressed in this letter opinion. For the reasons articulated below, this Court finds: (1) the intentional infliction of emotional distress and conspiracy to intentionally inflict emotional distress claims

survive demurrer, (2) the malicious prosecution and conspiracy to maliciously prosecute claims do not survive demurrer and (3) the conspiracy to breach a contract, tortious interference with a contract, and conspiracy to tortiously interfere with a contract claims are time-barred.

## Standard of Review

For the purposes of demurrer, the facts as stated in Plaintiff's Motion for Judgment will be taken as true and correct. The facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270 (1988) (quoting, *Ames v. American National Bank*, 163 Va. 1, 37 (1934)). A demurrer, unlike a motion for summary judgment, does not allow the court to evaluate and decide the merits of a claim; it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 422 S.E.2d 770 (1993). A demurrer will be sustained when the pleading does not state a cause of action or fails to state facts upon which the relief demanded can be granted. Va. Code § 8.01-273.

## Statement of Facts

Between 1996 and 1998, defendant Donna Swanson received several anonymous, handwritten letters of a threatening nature which she shared with her husband, defendant Alan Swanson. (MFJ, 3-4) In March of 1998, defendant John Grisham, Jr., received a similar communication, appearing to be penned by the same author. (MFJ, 4.) Having been fellow baseball coaches at St. Anne's-Belfield where their children attended school, Grisham and Alan Swanson discussed the letters, along with Donna Swanson. These three defendants jointly suspected Plaintiff, another parent of St. Anne's-Belfield pupils, to be the unnamed perpetrator of this harassment. Plaintiff avers that Grisham and the Swansons thereafter intentionally embarked upon a crusade to humiliate, embarrass, distress, and criminally convict her based on the unfounded but forgone conclusion that she was the littérateur. (MFJ, 6-7.)

Grisham and the Swansons admit that they suspected the plaintiff and thereafter sought to determine if she was in fact the author. Consequential to this inquiry, the plaintiff alleges that Grisham and Alan Swanson accessed the confidential school records of the plaintiff's son in order to obtain comparison writing samples. (MFJ, 5.) Grisham, as a member of the Board of Directors, and Alan Swanson, as a teacher, allegedly abused their authority by obtaining

an Enrollment Agreement and another eyes-only document which contained the plaintiff's handwriting. (MFJ, 5.)

Pursuant to authenticating the letters, Grisham submitted all aforementioned documents to David Liebman, a certified document examiner, who was assisted by Cina L. Wong. In a letter dated June 2, 1998, Liebman and Wong concluded that, "[b]ased upon thorough analysis of the items, and from an application of forensic document examination principles and techniques, it is our professional opinion, independently reached, that the hand that authored the known Standards for Comparison [of] Katherine Almy, appears to be the same hand that authored all the envelopes containing the Questioned letters." (Plaintiff's Request for Admission, Exhibit A.) Plaintiff takes issue with the independence of this opinion, asserting that Liebman and Wong joined the triumvirate's conspiracy; Grisham, she alleges, induced Liebman to falsely conclude that plaintiff was the letter-writer and thereafter Liebman enlisted Wong to substantiate that opinion. (MFJ, 5-6.)

With confirmation in hand, Donna Swanson filed a complaint with the Albemarle County Police Department purportedly in a reckless and intentional manner in order to propel the common scheme to injure the plaintiff. (MFJ, 6.) On August 13, 1998, Detective Grimes vicariously furthered the agenda of Grisham and the Swansons by interrogating the plaintiff in her home in a manner which she considered rude and demeaning. (MFJ, 6.) In an effort to absolve herself of any wrongdoing, the plaintiff voluntarily paid for a private polygraph examination which substantiated her denials of authorship. (MFJ, 6.) A voluntarily-taken State analysis of the plaintiff's handwriting again confirmed that she did not write the threatening letters to Donna Swanson or Grisham. Thereafter, the police abandoned their investigation. (MFJ, 6, 8.)

As a result of these events, Plaintiff alleges that she suffered humiliation, embarrassment, damage to her reputation, severe emotional distress which necessitated medical and psychological attention, and significant expenses in defending against the police interrogation and investigation.

## Procedural History

The plaintiff filed the instant case on August 11, 2000, in the Circuit Court of the County of Albemarle, alleging nine counts against Defendants. Each with a companion conspiracy claim, the purported causes of action included intentional infliction of emotional distress, malicious prosecution, tortious interference with a contract, and breach of contract. Plaintiff liberally spread her allegations among the defendants, accusing each of between two and seven offenses. In addition to punitive damages, the Motion for Judgment

prayed for compensatory and special damages in the amount of $1,000,000 per count. Without exception, Defendants responded to the suit with demurrers and motions to dismiss for all claims directed at them and pleaded the statute of limitations for three *ex contractu* claims. Both sides filed briefs in support of and opposition to such motions.

Following the recusal of the Honorable Paul M. Peatross, Jr., Judge of the Circuit Court of the County of Albemarle, the Court heard oral arguments on these issues on March 2, 2000, and upon Plaintiff's motion, the two St. Anne's-Belfield defendants were nonsuited. Having thus eliminated the breach of fiduciary duty and breach of contract claims, the matter was thereby focused onto the remaining five defendants and above-listed seven counts. This opinion considers these defendants' demurrers, motions to dismiss, and statute of limitations plea.

*Analysis*

A. *Conspiracy Claims*

Plaintiff alleged four civil conspiracy claims in her Motion for Judgment: conspiracy to maliciously prosecute, conspiracy for intentional infliction of emotional distress, conspiracy to tortiously interfere with a contract, and conspiracy to breach a contract. For a conspiracy claim to be viable, the plaintiff must allege all of the elements of the underlying claim in order to make a *prima facie* case for conspiracy to commit that claim. *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300 (1997). Thus, if Plaintiff's Motion for Judgment fails to state a particular cause of action, then no conspiracy to commit the corresponding cause of action will survive demurrer. In addition, the plaintiff must allege an unlawful act or lawful means to commit an unlawful act for a conspiracy claim to survive demurrer.

B. *Count V: Intentional Infliction of Emotional Distress; Count I: Conspiracy for Intentional Infliction of Emotional Distress*

Virginia first recognized the tort of intentional infliction of emotional distress in *Womack v. Eldridge*, authorizing its proper application where: (1) the conduct was intentional or reckless, (2) the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality, (3) there is a causal connection between the conduct complained of and the emotional distress, and (4) the emotional distress was severe. 215 Va. 338, 342 (1974). In order for both the tort and conspiracy to

commit the tort to survive demurrer, the plaintiff must allege all of the facts necessary to satisfy the *Womack* elements. Each of these elements will be examined in turn, below.

To satisfy *Womack*'s requirement for intentional or reckless conduct, the defendant must have had the specific purpose of inflicting emotional distress or must have intended his conduct and knew or should have known that the emotional distress would likely result. *Womack* at 342; *Ely v. Whitlock*, 238 Va. 670, 677 (1989). Therefore, in order to survive demurrer, the plaintiff must allege that each of the implicated defendants (1) acted with the specific purpose of inflicting emotional distress or (2) intended his conduct and knew or should have known that emotional distress would likely result. Here, the plaintiff alleged that, "Mr. Grisham, Mr. Swanson and Mrs. Swanson agreed and acted in concert to engage in reckless and intentional course of actions designed to . . . cause . . . severe emotional distress" (MFJ at 4) and "Mr. Liebman and Ms. Wong . . . [falsely] concluded Ms. Almy was the author . . . knowing that their conclusion . . . would cause her severe emotional distress." (MFJ at 8.) These statements, taken as true and correct for the purpose of demurrer, therefore constitute allegations sufficient to satisfy the intentional or reckless criterion.

Because the Commonwealth disfavors actions for intentional infliction of emotional distress, it utilizes the second *Womack* element, the outrageousness requirement, as a stringent gatekeeper against frivolous lawsuits. See, *Ruth v. Fletcher*, 237 Va. 366, 372-73 (1989). The requisite conduct must be, "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 26 (1991). Thus, to survive demurrer, the plaintiff must at least allege behavior which could be construed as meeting this high burden for each of the implicated defendants. Reduced to its most egregious components, Plaintiff claims that all defendants acted to harass, humiliate, embarrass, criminally prosecute, and cause severe emotional distress to her. Specifically, Plaintiff avers that in pursuit of that vendetta, Grisham publicly accused her of authoring harassing letters despite a lack of evidence, abused his authority at the school to raid confidential files for handwriting samples, and induced a certified document examiner to manufacture evidence; Alan Swanson publicly accused her of authoring harassing letters despite a lack of evidence and abused his authority at the school to raid confidential files for handwriting sample; Donna Swanson publicly accused her of authoring harassing letters despite a lack of evidence and knowingly filed a false complaint with the police; and Liebman and Wong knowingly falsified a handwriting analysis in order to fabricate evidence for

use in a criminal investigation. In the opinion of this Court, at the demurrer stage, the behavior alleged against each defendant can be construed as meeting the outrageousness requirement.

To satisfy the third *Womack* element, there must be a causal connection between the conduct complained of and the emotional distress. At the demurrer stage, only the sufficiency of the factual allegations are examined to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 422 S.E.2d 770 (1993). The plaintiff alleges that the actions of each of the defendants, be it procuring falsified evidence, raiding personal files, knowingly falsifying evidence, or filing a complaint with the police, proximately caused her severe emotional distress. *See e.g.*, MFJ at 7, 11. Assuming the truth of these allegations, there exists a causal connection between all of the defendants' actions and the emotional distress which the plaintiff suffered. Thus, the third *Womack* element is satisfied.

Finally, to satisfy the fourth *Womack* criteria, the plaintiff must have alleged that the emotional distress which she suffered was severe. For her claim to survive demurrer, the emotional distress must be so severe that no reasonable person could be expected to endure it. *Russo v. White*, 241 Va. 23, 27 (1991). In her Motion for Judgment, the plaintiff details that she has suffered severe emotional distress for which she sought medical attention and psychological counseling. As a result of this emotional distress, the plaintiff claims that she suffered stress, anxiety, sleeplessness, nervousness, and depression. (MFJ at 6, 8.) In *Russo*, the Supreme Court found that demurrer is appropriate where the plaintiff alleged similar symptoms, stress, sleeplessness, nervousness, withdrawal, and inability to concentrate at work. *Id.* at 28. However, the Court distinguished this outcome from hypothetical fact patterns including one in which the plaintiff sought medical attention for these symptoms. *Id.* at 28. Here, the fact that plaintiff allegedly sought such medical treatment for her emotional distress satisfies the severity criterion for the purpose of demurrer.

As to the companion claim, the Supreme Court defined a civil conspiracy as, "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damages to the plaintiff. *Glass v. Glass*, 228 Va. 39, 47 (1984); *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985). Therefore, to survive demurrer, the plaintiff must allege either an unlawful act or an unlawful purpose. In the instant case, Plaintiff alleges that the underlying tort of intentional infliction of emotional distress in and of itself establishes the unlawful purpose or means requirement. If the underlying tort survives

demurrer, then it may constitute the unlawful purpose required for a conspiracy claim. *Hechler* at 402-03. Therefore, this Court accepts the plaintiff's claim of intentional infliction of emotional distress as the unlawful act or means necessary to constitute a civil conspiracy for the purpose of demurrer.

For the aforementioned reasons, the motions to dismiss the intentional infliction of emotional distress and conspiracy to intentionally inflict emotional distress claims are denied.

### C. *Count VI: Malicious Prosecution; Count II: Conspiracy to Maliciously Prosecute*

As a fundamental requirement to surviving demurrer on malicious prosecution, the plaintiff must allege facts that support the occurrence of a prosecution. The Supreme Court of Virginia has not defined prosecution as it applies to this tort. In the alternative, secondary sources indicate that process must be issued for the purpose of bringing the accused before a court, an indictment must be returned, or the person must be arrested in order for there to be a prosecution on which the tort can be based. *See*, Restatement (Second) of Torts § 654 (1977). Other jurisdictions approach the prosecution pre-requisite in a similar manner and require some formal action above and beyond mere investigation to trigger the cause of action. *Losi v. Natalicchio*, 112 N.Y.S.2d 706, 707 (N.Y. Sup. Ct. 1952) (holding that a preliminary investigation was insufficient to support a malicious prosecution claim); *Paton v. Rose*, 205 A.2d 609, 610 (D.C. 1964) (holding that filing of a complaint was not the initiation of a criminal proceeding to support a malicious prosecution claim).

The factual allegations in the Motion for Judgment, accepted as true for the purpose of demurrer, enumerate a single non-custodial interrogation followed by voluntary submission to a handwriting analysis and a polygraph examination. (MFJ at 6.) Plaintiff did not allege that process, a warrant, or a summons was issued against her, nor was she indicted or arrested. Therefore, the events recounted in the Motion for Judgment do not constitute a prosecution, under either the common or a broad definition. To hold otherwise would chill the investigation process which is inherent to a system of law enforcement.

It is worth noting that conspiracy to maliciously prosecute is not a cause of action recognized by the Commonwealth. Regardless of the facts alleged, it is a legal impossibility for the plaintiff to have stated a cause of action upon which the relief demanded can be granted without the Court creating a new

cause of action. Especially considering the facts alleged in this case did not satisfy the prosecution element of the tort, the plaintiff's implicit invitation to tread on legislative ground is declined.

Defendants' demurrer is therefore sustained with respect to all defendants on the claims of conspiracy to maliciously prosecute and malicious prosecution and the motions to dismiss are granted.

**D.** *Count VII: Tortious Interference with a Contract; Count III: Conspiracy to Tortiously Interfere with a Contract; Count VIII: Conspiracy to Breach a Contract*

In her Motion for Judgment, Plaintiff alleges that she had a valid and binding contractual relationship with St. Anne's-Belfield which obliged the school to keep strictly confidential all records concerning her children. (MFJ at 10.) This contract purportedly was designed to protect the privacy of both Plaintiff and her children. Tortious interference with a contract, conspiracy to tortiously interfere with a contract, and conspiracy to breach a contract claims all rely upon Defendants' breach of such promises by raiding Plaintiff's children's files for handwriting samples.

Defendants' pleaded the statute of limitations as an absolute bar to these three *ex contractu* claims. Plaintiff and Defendants agree that the tortious interference with a contract, conspiracy to tortiously interfere with a contract, and conspiracy to breach a contract are governed by a two year statute of limitations. Defendants assert that these claims are governed by the two year statute of limitations established in Virginia Code § 8.01-248's catch-all provision, while Plaintiff asserts that the claims are governed by Virginia Code § 8.01-243's personal injury provision. Both of these statutes specify a two year statute of limitations. Because the alleged injury is personal in nature, Virginia Code § 8.01-248 applies. *7600 Ltd. Partnership v. QuesTech, Inc.,* 41 Va. Cir. 60 (1996); *Handley v. Boy Scouts of Am.,* 32 Va. Cir. 524 (1992). Because Plaintiff filed her Motion for Judgment on August 11, 2000, her claim could not have accrued before August 11, 1998, to have been timely.

The parties disagree on the date when Plaintiff's claim accrued. Plaintiff asserts that her claim accrued on August 13, 1998, when she was confronted by the Albemarle County detective and learned of the allegations against her. This is the first point at which the Plaintiff discovered her injury. Defendants assert that Plaintiff's claim accrued when her records were unlawfully disclosed, sometime on or before June 2, 1998. The specific date when Plaintiff's files allegedly were wrongfully accessed is heretofore unknown. June 2, 1998, corresponds to the date of Defendants Liebman and Wong's

letter reporting the results of their handwriting analysis which examined these documents. Therefore, the documents must have been procured before June 2, 1998. For the purposes of analysis, the Court will utilize this date as the date when the contract was breached. This is the point at which the contract was breached by invading Plaintiff's privacy. Thus, the instant question is when the tortious interference with a contract, conspiracy to tortiously interfere with a contract, and conspiracy to breach a contract claims accrued.

"We are committed in Virginia to the rule that in personal injury actions, the limitation on the right to sue begins to run when the wrong is done and not when the Plaintiff discovers that [s]he has been damaged." *Hawks v. DeHart*, 206 Va. 810, 813 (1966). "Whenever any injury, however slight it may be, is complete at the time the [act or omission] is completed, the cause of action then accrues; but whenever the [injurious act or omission] is not legally injurious, there is no cause of action until such injurious consequences occur, and it accrues at the time of such consequential injury." *Locke v. Johns-Manville Corp.*, 221 Va. 951, 960 (1981) (quoting *Southern Ry. v. Leake*, 140 Va. 438, 441 (1924)). Although Plaintiff alleges she suffered emotional injury when she was confronted by the detective, she was first "injured" under the Commonwealth's standards, *supra*, albeit without her knowledge when her children's files were allegedly purloined by certain defendants; this is the date of accrual. The breach of privacy and contract having occurred sometime before June 2, 1998, and her claim having been filed August 11, 2000, the three claims are all time-barred by the two year statute of limitations. Defendants' plea of the statute of limitations is thus granted, and, therefore, the tortious interference with a contract, conspiracy to tortiously interfere with a contract, and conspiracy to breach a contract claims are dismissed.

## Conclusion

This Court finds (1) the motions to dismiss the intentional infliction of emotional distress and conspiracy to intentionally inflict emotional distress claims are denied, (2) the motions to dismiss the malicious prosecution and conspiracy to maliciously prosecute claims are granted, (3) the motions to dismiss the conspiracy to breach a contract, tortious interference with a contract, and conspiracy to tortiously interfere with a contract claims are granted.