# CIRCUIT COURT OF THE CITY OF NORFOLK

Mildred Witcher

v.

Lorrie R. Reid,
James W. Reid,
and Robert L. Brown, Jr.

May 31, 2006

Case No. (Chancery) CH05-1974

BY JUDGE CHARLES E. POSTON

This case comes before the Court on the Defendants' demurrers to the Plaintiff's Second Amended Bill of Complaint. The Plaintiff pleaded three claims against the Defendants: (1) breach of contract or fiduciary duty, (2) conspiracy to commit constructive fraud, and (3) conspiracy to commit actual fraud. The Court has already overruled a demurrer to the first count leaving only the issue of whether the Plaintiff has alleged sufficient facts in her Second Amended Bill of Complaint to survive the Defendants' demurrers to counts two and three.

*Facts on Demurrer*

The Plaintiff, Mildred Witcher, a seventy-nine-year-old woman, was hospitalized as a result of injuries sustained in an automobile accident on August

12, 2003. Upon release from the hospital, she resided under heavy sedation at Tatem Nursing Home, a facility she wished to leave.

During her stay at the Tatem Nursing Home, Witcher's niece, Lorrie R. Reid, a co-defendant, promised to care for Witcher by removing her from the home and seeing to her emotional and physical needs. Reid told Witcher that she would need a power of attorney over her to get her out of the home and manage her affairs and promised not to act adversely to her interests. Based on Reid's representations, Witcher executed a general power of attorney that appointed Reid as her "true and lawful attorney" on April 26, 2004. Witcher maintains that when Reid made the representations, she intended to defraud Witcher.

From April 26, 2004, until June 13, 2005, Witcher lived with Reid and her husband, co-defendant James W. Reid, in Virginia Beach. While Witcher lived with the Reids, she maintains, the Reids confined her to a back bedroom and threatened her with physical and mental abuse. As a result of this mistreatment, Witcher became isolated, fearful, and depressed. Upon leaving the Reids' house, Witcher moved to Sentara Village.

On November 29, 2004, Lorrie Reid, acting under her power of attorney on Witcher's behalf, sold Witcher's home of over thirty-two years for $25,000 to James Reid and Robert L. Brown, Jr., Lorrie Reid's half-brother, also a co-defendant. Witcher claims that she did not know of or agree to the sale and that the actual value of the property was approximately $110,000. After the sale, the Defendants made improvements to the property and sought to re-sell it for $195,000. In essence, the heart of Witcher's allegations is that between April 26, 2004, and June 13, 2005, the Defendants conspired to acquire title to Witcher's home through fraud. They intended to pay Witcher an inadequate sum for the property, improve it, and then resell the house.

*Analysis*

*Standard of Review*

A demurrer tests the sufficiency of factual allegations to determine whether the pleading states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on demurrer, the court may

consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted).

### *Whether the Pleading States Inconsistent Facts*

Before evaluating the Defendant's legal arguments, the Court will consider the defense's argument that the bill of complaint contains inconsistent factual allegations. In Paragraph 20 of Witcher's Second Amended Bill of Complaint, she claims:

> The purported sale of Plaintiff's home by deed of November 29th, 2004, and the Defendants' actions thereafter in attempting to sell Plaintiff's property for $195,000, after they represented to the Plaintiff that it was only worth $25,000, constitutes a serious misrepresentation of facts either intentionally and knowingly or innocently and negligently all of which has caused Plaintiff great damage.

The defense claims that this allegation contradicts Witcher's earlier assertion that she had no prior knowledge of the sale.

At one time, Virginia would not permit a party to plead inconsistent facts unless "the pleader [had] no knowledge as to which of two sets of facts should be alleged." *Manassas Park Dev. Co. v. Offutt*, 203 Va. 382, 384, 124 S.E.2d 29, 31 (1962). Commentators have not agreed on whether this rule is still good law. *Compare* W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 6.02[4][b] (2005) ("Today there are no limitations or restrictions on alternative pleading.") *with* Charles E. Friend, *Friend's Virginia Pleading and Practice* § 6-3 (2005) (indicating that *Offutt*'s restriction on alternate pleading remains); 14B Michie's Jurisprudence, *Pleading*, § 9 (2004) (same).

The Court need not attempt to resolve this dispute today. While the sentence at issue is not a model of clarity, it does not necessarily contradict Witcher's claim of ignorance. The sentence does not explicitly state that the representation occurred before the sale. Even if it did, simply because the Defendants told Witcher that her home was worth $25,000, does not mean they told her of their intent to transfer it. Therefore, the Court finds that the bill of complaint does not plead inconsistent facts.

## Civil Conspiracy

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19, 30 (Warren County 1994) (Peatross, J.). Logically, "[W]ithout proof of the underlying tort, there can be no conspiracy to commit the tort." *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997). "Thus, if Plaintiff's Motion for Judgment fails to state a particular cause of action, then no conspiracy to commit the corresponding cause of action will survive demurrer." *Almy v. Grisham*, 55 Va. Cir. 401, 404 (Albemarle County 2001) (Hogshire, J.).

The Defendants read *Almy* to mean that Witcher must plead separate counts of actual and constructive fraud for her counts of conspiracy to commit those torts to survive demurrer. This Court disagrees. In *Commercial Business Systems*, the Supreme Court of Virginia Court stated that "without *proof* of the underlying tort, there can be no conspiracy to commit that tort." 253 Va. at 300, 484 S.E.2d at 896 (emphasis added). Therefore, the viability of the conspiracy claim does not rest on pleading or collecting on the underlying tort claim but on showing that the underlying elements of that claim are present. Likewise, in *Almy*, the Circuit Court noted, "For a conspiracy claim to be viable, the plaintiff must allege all of the *elements* of the underlying claim in order to make a prima facie case for conspiracy to commit that claim." 55 Va. Cir. at 404 (emphasis added). Consequently, the Court holds that a pleading that contains a claim for conspiracy to commit a tort need not make a separate claim for the underlying tort; simply alleging the elements of the underlying tort in the pleading is sufficient.

This finding is consistent with the generally liberal rules of pleading provided by Rule 1:4(k), which allows that a "party *may* state as many separate claims or defenses as he has." Va. Sup. Ct. R. 1:4(k) (emphasis added). Of course, if a party fails to plead all of her claims in one pleading, those claims may be subject to *res judicata* or claim preclusion. Va. Sup. Ct. R. 1:6. Thus, which specific claims to bring in a suit is a matter committed to the plaintiff's discretion.

In light of the foregoing, it appears that a civil claim for conspiracy to commit a tort has three elements: first, the elements of the underlying cause of action; second, the agreement to commit an unlawful act or use unlawful means to commit a lawful act; and last, damage. Witcher has clearly alleged an agreement to commit an unlawful act by claiming that the Defendants conspired to defraud her of her home. Likewise, she has also alleged that the agreement caused her damage in that she received inadequate consideration for her property. Therefore, the only remaining issue is whether the Second Amended Bill of Complaint adequately alleges the elements of constructive or actual fraud, the underlying causes of action in this case.

*Constructive Fraud*

At the outset, the Defendants claim that a conspiracy to commit constructive fraud is a legal impossibility. The Defendants note that a conspiracy is a combination of two parties to accomplish some unlawful goal or a lawful goal through an unlawful act. *Glass*, 228 Va. at 47, 321 S.E.2d at 74. In either case, the parties must intend that the unlawful act or goal be completed because they have combined to accomplish it. However, one element of constructive fraud is that the defendant "negligently or innocently" made a false representation of material fact. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996). The Defendants assert that no one can intend to negligently or innocently misrepresent a fact.

While this is a question of first impression in Virginia, other states concur with the Defendants. In *Juhl v. Airington*, the Supreme Court of Texas stated that "civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent." 936 S.W.2d 640, 644 (Tex. 1997) (internal quotations omitted); *see also Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888, 894 (1995) ("There is no such thing as accidental, inadvertent, or negligent participation in a conspiracy.").

The Court finds this rationale persuasive. In Virginia, as in Texas, negligence is not an intentional tort. *See Gossett v. Jackson*, 249 Va. 549, 554, 457 S.E.2d 97, 100 (1995) (defining negligence as "the failure to exercise that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another" (internal quotations omitted)). If a party intends the damage caused to another, then the tort is no longer negligence but one of several other intentional torts, such as battery,

trespass, or intentional infliction of emotional distress, to name a few. *See generally* Charles E. Friend, *Personal Injury Law In Virginia*, § 6.1 (3d ed. 2003) (discussing the difference between intentional torts and negligence and providing examples of the former). Therefore, the Court will sustain the demurrer to this claim and dismiss it.

To be sure, *Adcock* held that civil conspirators may be liable for negligent torts committed in furthering a conspiracy to commit an intentional tort. *Adcock*, 164 Ill. 2d at 64, 645 N.E.2d at 894. However, in the case at bar, it does not appear that Witcher has alleged that the Defendants committed the negligent misrepresentation in furtherance of a conspiracy to commit an intentional tort. Instead, she has alleged that the negligent misrepresentation was the very object of the conspiracy. As discussed above, that is a legal impossibility.

*Actual Fraud*

To prevail on a claim of actual fraud, a litigant "must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005) (internal quotations omitted). Moreover, these elements must be pleaded with particularity. "Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997).

First, the Court finds that Witcher has pleaded each element of fraud in her Second Amended Bill of Complaint. Witcher claims that Lorrie Reid stated that she and her husband "would not act adversely to Plaintiff's best interests" and that "she would take care of Plaintiff" by removing Witcher from the home and seeing to her emotional and physical needs. In fact, Witcher claims, Reid fully intended to act adversely to Witcher's interests when she made those statements. Therefore, the representation by Reid of her intent was false, the representation was material in light of the significant power Witcher bestowed on Reid, and Reid knew the representation to be false. Moreover, Reid made the representation in order to mislead Witcher to execute a general power of attorney. Next, Witcher relied on Reid's representation that she would not adversely represent Witcher's interests by signing the power of attorney. As a result of that reliance, Witcher received $25,000 for property that was worth at least $110,000. Therefore, on its face, the Second Amended Bill of Complaint states all six elements of actual fraud.

The Defendants further allege that Witcher failed to plead the elements of fraud with particularity. Virginia courts look to a number of the characteristics of the pleading to determine whether it states a claim for fraud with sufficient specificity. The pleadings must identify the person who made the misrepresentation and the time and place of the alleged fraud. *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978); *RML Corp. v. Lincoln Window Products, Inc.*, 67 Va. Cir. 545, 569 (City of Norfolk 2005) (Leafe, J., and Thomas, J.). The plaintiff must allege that the wrongdoer knew or had reason to know that the plaintiff would rely on the false representation. *Mortarino*, 251 Va. at 295, 467 S.E.2d at 782. Additionally, the pleadings must clearly show that the misrepresentations caused the plaintiff's damage, *Torrez v. Comacho*, 66 Va. Cir. 161, 169 (Fairfax County 2004) (Thacher, J.), and that the statements were misstatements of material fact and not future promises, *Blair Constr. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 139 (1997).

The Court finds that the pleading alleges the facts with sufficient particularity to survive demurrer. First, the bill of complaint states that Lorrie Reid made false statements to Witcher while she resided at the Tatem Nursing Home and that, based on these statements, Witcher executed the power of attorney on April 26, 2004. Therefore, the bill of complaint identifies who made the false statements and gives the approximate physical and temporal setting. Second, if Reid told Witcher that she would care for her and look after her best interests, Reid must have expected Witcher to rely on those statements. Third, because the bill of complaint alleges that Witcher received $25,000 for property that was worth at least $110,000 as a result of relying on Reid's representations, it clearly alleges that the misrepresentation caused the damages Witcher suffered. Finally, Reid's statements were not unfulfilled promises in the nature of a frustrated contract, but misrepresentations of her actual present intent. The bill of complaint does not allege that Reid intended to represent faithfully Witcher's interests and later changed her mind. Instead, the bill of complaint claims that she intended to steal from Witcher at the time of the misrepresentation. Thus, the pleading adequately states a claim for actual fraud.

## Equitable Relief

Finally, the Defendants maintain that the Court lacks equity jurisdiction to grant Witcher's request to have the deed set aside. They claim that Witcher has an adequate remedy at law, namely the difference between the fair market value of the house at the time of the transfer and the purchase price.

422

As a general rule, courts lack equity jurisdiction when an adequate remedy exists in law. *See Faulknier v. Shafer*, 264 Va. 210, 216, 563 S.E.2d 755, 758 (2002) (noting that the existence of an adequate remedy at law may preclude equitable relief). However, the Supreme Court of Virginia has held that, "when a right to acquire an interest in land is involved . . . an award of damages would not provide an adequate remedy." *Runion v. Helvestine*, 256 Va. 1, 9, 501 S.E.2d 411, 416 (1998). In this case, because the underlying subject of the litigation is Witcher's home of over thirty-two years, an award of monetary damages would be an inadequate remedy. Thus, the Court has jurisdiction in equity to set aside the deed.

## Conclusion

In sum, the Court sustains the Defendants' demurrers to count two of Witcher's Second Amended Bill of Complaint, conspiracy to commit constructive fraud, and dismisses that count with prejudice. The Court overrules the Defendants' demurrers to Count Three, conspiracy to commit actual fraud, and holds that it possesses equity jurisdiction to set aside the deed.