**Heather POOLE, Plaintiff,**

v.

**Greg PASS, et al., Defendants.**

**No. 1:04CV1268.**

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 6, 2005.

---

also brings a claim for intentional infliction of emotional distress, which defendants have moved to dismiss. For the reasons stated below, defendants' summary judgment and dismissal motions must be granted.

Thomas Wayne Biggs, II, Law Office of Mark R. Dycio, PC, Fairfax, VA, for Plaintiff.

M. Alice Rowan, Assistant County Attorney, Prince William, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this § 1983[1] suit, plaintiff Heather Poole sues Gregory Pass[2] and three unnamed county police officers for violations of her Fourth Amendment rights when she was detained for almost an hour on suspicion of towing a car in violation of a county ordinance. The towing ordinance prohibits the towing of an illegally parked car unless the land owner or his agent (the agent cannot also be an agent of the towing company) is present and gives written authorization for the tow.

At issue on summary judgment is whether defendants had reasonable articulable suspicion to stop, and then probable cause to arrest, plaintiff for violating the ordinance when plaintiff was (i) riding in a towing company truck, (ii) wearing a towing company t-shirt, and (iii) working with a company known to defendants as a repeat offender of the ordinance. Plaintiff

### I.[3]

Prince William County, in response to complaints from county citizens that tow truck drivers were illegally towing legally parked cars, enacted the following ordinance, which provides in pertinent part:

[I]t shall be unlawful for any towing firm or operator to tow a vehicle from a parking space on any property unless the property owner or authorized agent of the property owner is present and authorizes, in writing, the removal of such vehicle. For purposes of this article, *no towing firm or operator may be an authorized agent of a property owner.*

Prince William County, Va., Code § 13–497(c) (emphasis added).

On the night of October 1, 2004, Prince William County Police Officer Pass came upon a tow in progress that he suspected might violate this ordinance. When Officer Pass entered the Coverstone Apartments ("Coverstone") parking lot, which requires its residents or guests to display an authorized parking sticker to park in its limited number of spaces, a tow truck was in the process of towing a vehicle from the lot. The truck displayed a logo for Henry's Wrecker Service Company of Fairfax County ("Henry's"), the employees of which Officer Pass knew had previously

---

1. 42 U.S.C. § 1983.

2. As represented by defendants, the defendant named in the complaint as Greg Pass is more properly known as Gregory Pass.

3. The record reflects the following largely undisputed facts and where disputes exist they are immaterial, and identified as such, or construed favorably to plaintiff, as required. *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

been charged with and convicted of illegally towing cars from private property. Officer Pass further knew that these previous violations of § 13–497(c) included tows without a property owner's agent present. No Coverstone agent was visibly present to authorize the tow. Instead, both persons on the scene, Poole and the Henry's driver, were sitting in the cab of the tow truck.[4] Given this, Officer Pass blocked the tow truck's exit with his police cruiser and stopped the persons in the cab to investigate. At approximately the same time, three additional officers arrived on the scene.[5]

During questioning, Poole explained that she was an authorized agent for Coverstone and that she had just authorized the towing of several vehicles from the Coverstone lot. She also produced a letter on Coverstone letterhead to the effect that Poole had "authorization to be [Coverstone's] agent for the removal of illegally parked vehicles." Poole further claims that she produced a written authorization, as required by § 13–497(c), that she had provided to the Henry's driver to authorize the vehicle's tow.[6] Yet when Officer Pass requested that Poole exit the cab of the vehicle, he observed that Poole was wearing a t-shirt with a Henry's logo on the front. Poole explained that she had no official Coverstone clothing and was wearing a Henry's t-shirt because she wanted the residents and/or police to know she was on the property to authorize vehicle tows. Nonetheless, because Poole was wearing a Henry's shirt, and riding in a Henry's truck with a Henry's employee, Officer Pass suspected that Poole was a Henry's agent and thus continued to detain her for further investigation.

While the parties agree that the entire investigation lasted approximately 50–55 minutes, the stories diverge at this point. According to Officer Pass, throughout this period defendants were engaged in an active, good faith investigation to determine whether Poole was engaged in illegal towing activity in violation of Prince William County Code. During the course of this investigation, the owner of the vehicle arrived and produced a valid parking pass. Also according to Pass, Poole was questioned but otherwise permitted to walk around freely in the parking lot, at times unaccompanied by police officers. While Officer Pass concluded that there was probable cause to believe a crime was being committed, neither Poole nor the Henry's employee were fined or taken into custody at that time.[7]

Poole's version differs somewhat. According to Poole, while she was detained, Officer Pass and the other officers questioned her, berated her, and threatened to charge her with various crimes. Specifically, they accused her of lying and demanded that she tell the truth, i.e., that she worked for Henry's. Moreover, Poole claims that Officer Pass told her it would not "look good" if she were to be arrested in front of her children, and that if she

---

4. While Officer Pass claims that Poole was accompanied by two Henry's employees in the cab of the truck, Poole claims that it was only one. This disputed issue of fact is immaterial to the § 1983 analysis.

5. Poole has sued these three unidentified defendants as "John Does." See Schiff v. Kennedy, 691 F.2d 196, 197–98 (4th Cir.1982) ("John Doe" suits permitted against "real, but unidentified" defendants).

6. According to Officer Pass, Poole never provided him with this written authorization, but at oral argument defendants, by counsel, conceded this point for the sake of this motion.

7. Officer Pass explained in his affidavit that criminal investigation of the matter is ongoing and that the investigation may yet result in state court prosecution.

were charged, her children could be taken from her. While Poole concedes that the driver of the towed vehicle ultimately produced a valid parking pass, she claims that it was not appropriately displayed when she authorized the tow and that the owner produced it only after looking for it in his car. Poole further claims that despite her repeated requests, she was not permitted to leave, to use the restroom, or to smoke. Rather, not until Officer Pass returned her identification and Coverstone authorization letter at the end of the 50–55 minutes was she told she could leave.

Approximately three weeks after this incident, Poole on October 20, 2004 filed her complaint in this suit claiming $200,000 in compensatory and punitive damages and alleging claims (i) for violations of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983, and (ii) for intentional infliction of emotional distress under Virginia common law. Defendants promptly filed a motion to dismiss and/or

for summary judgment claiming that the case should be dismissed (i) for lack of personal jurisdiction over the "John Doe" defendants, pursuant to Rule 12(b)(2), Fed. R.Civ.P., (ii) for insufficiency of service of process on Officer Pass pursuant to Rule 12(b)(5), Fed.R.Civ.P., and (iii) for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P., or in the alternative for summary judgment on Poole's § 1983 claim pursuant to Rule 56, Fed.R.Civ.P., on the grounds (a) that defendants did not violate plaintiff's Fourth Amendment rights, or (b) that defendants are entitled to qualified immunity. Defendants' dismissal motion for lack of personal jurisdiction over the John Doe defendants is meritless,[8] and while defendants argue correctly that Poole failed to effect proper service on Pass, either defendants waived this issue by filing a motion in the alternative for summary judgment or it is an alternative ground for dismissal as the matter is resolved here on the merits.[9] Regarding

---

**8.** Defendants claim that the case against the three "John Doe" defendants should be dismissed for lack of personal jurisdiction, complaining that no "statutory basis exists for 'John Doe' actions." Yet, it is settled in the Fourth Circuit that John Doe suits are permitted against "real, but unidentified, defendants." *Schiff v. Kennedy,* 691 F.2d 196, 197–98 (4th Cir.1982); 2 *Moore's Federal Practice* ¶ 10.02 (3d ed.2004); *Njoku v. Unknown Special Unit Staff,* 2000 WL 903896, at *1, 2000 U.S.App. LEXIS 15695, at * 2 (4th Cir.2000) (unpublished disposition) (holding that John Doe suits are permitted when "the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery").

**9.** Poole's process server did not serve Officer Pass directly, but rather delivered the summons and complaint to an administrator in the Office of the Chief of Police. Because this § 1983 action is properly brought against the individual defendant officers, not the County or Police Department, service on an administrator does not comport with the Federal Rules' or with Virginia law's requirements for

service on Pass. *See* Rule 4(e), Fed.R.Civ.P. (service of an individual may be accomplished pursuant to the law of the state in which the district court is located or service is effected or by delivering service (i) to the individual, (ii) to his or her authorized agent, or (iii) to a person of suitable age and discretion at the person's home or usual place of abode); Va. Code § 8.01–296 (service on a natural person accomplished by delivering a copy of the summons and complaint (i) to the party, (ii) to a family member over the age of sixteen at the party's usual place of abode, or (iii) by posting a copy of the process to the main entrance of the party's abode and mailing a copy to the person's address not less than ten days before default judgment is entered). Put differently, service on a co-worker at a person's place of work is insufficient to serve an individual sued in his individual capacity. *See Elkins v. Broome,* 213 F.R.D. 273 (M.D.N.C.2003) (service on duty officer, who was not appointed agent of policemen, did not constitute effective service in § 1983 suit).

While defendants may have waived this objection by filing an alternative motion for

defendants' Rule 12(b)(6) motion to dismiss plaintiff's § 1983 claim, given both parties' reliance on affidavits to support their claims, the motion is appropriately construed as a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Defendants' 12(b)(6) motion to dismiss plaintiff's intentional infliction of emotional distress is also decided here. The issues have been fully briefed and argued and the matter is ripe for disposition.

## III.

### A. 42 U.S.C. § 1983 Claim [10]

■ Summary judgment is appropriate only when, viewing the evidence in a light most favorable to the non-moving party, there is no issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is also true that "the mere existence of some disputed facts does not require that a case go to trial," rather, "[t]he disputed facts must be material to an issue necessary for the

proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Given these principles and the lack of any disputed issue of material fact, summary judgment on Poole's § 1983 claim is warranted.

Defendants argue that summary judgment should be granted on Poole's § 1983 claim because (i) Poole's Fourth Amendment rights were not violated and (ii) even if those rights were violated, defendants are entitled to qualified immunity. In a suit against an officer for an alleged violation of a constitutional right, qualified immunity analysis generally proceeds in two distinct steps, which are to be "considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the court must consider the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a con-

summary judgment pursuant to Rule 56, Fed. R.Civ.P., and seeking a ruling on the merits of Poole's claims before any defect in service of process could be adjudicated or cured, it is unnecessary to decide this issue here because even if defendants waived their objections to the sufficiency of service of process, the case is still dismissed here on summary judgment. *See Dodson v. Merson*, 2004 WL 1534209, at *1, 2004 U.S. Dist. LEXIS 12682, at *4 (D.Md.2004) (insufficiency of process objection waived by filing motion to dismiss alternatively as motion for summary judgment).

**10.** Defendants also argue in the alternative that Poole has filed this suit in an attempt to avoid criminal prosecution and thus that this court should abstain from resolving the matter pursuant to the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91

S.Ct. 746, 27 L.Ed.2d 669 (1971) (overturning decision to enjoin ongoing criminal prosecution and requiring abstention). While abstention might well have been appropriate if a state prosecution against Poole were ongoing, no such prosecution is pending nor has Poole sought to enjoin such a prosecution, and thus the comity concerns addressed in *Younger* and its progeny do not apply here. *See Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir.1989) ("[F]ederal courts should abstain from the decision of constitutional challenges to state action ... 'whenever the federal claims have been or could be presented in *ongoing state judicial proceedings* that concern important state interests.'") (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)) (emphasis added).

stitutional right?" *Id.* at 201, 121 S.Ct. 2151 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the answer to the first question is "no," then the analysis ends; the plaintiff cannot prevail. *Clem v. Corbeau,* 284 F.3d 543, 549 (4th Cir.2002). Only if the answer to this question is "yes," does the analysis proceed to the second step of the analysis, that is, to determine whether the right was "clearly established," such that it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02; *see also Clem,* 284 F.3d at 549. Because it is clear from the undisputed material facts taken in a light most favorable to Poole that neither the initial stop nor the 50–55 minute detention violated Poole's Fourth Amendment rights, it is unnecessary to reach the second step of the analysis.

*1. Investigatory Stop*

▮▮▮ To begin, Officer Pass's initial decision to stop Poole to investigate did not violate plaintiff's Fourth Amendment rights because the undisputed facts known to Officer Pass at the time of the stop supported his suspicion that Poole was engaged in an illegal tow in violation of § 13–497(c). Consistent with the Fourth Amendment, an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable articulable suspicion is less demanding than the probable cause standard required for an arrest and considerably less demanding than proof of wrongdoing by a preponderance of the evidence. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). An officer need only be able to articulate a "minimal level of objec-

tive justification," that is, something "more than an unparticularized suspicion or hunch." *Id.* (internal quotations omitted) (citing *Terry,* 392 U.S. at 27, 88 S.Ct. 1868 and *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).

These principles, applied here, compel the conclusion that Officer Pass' investigatory stop did not violate Poole's constitutional rights because he had reasonable articulable suspicion that the tow in progress was in violation of § 13–497(c). To be an authorized tow under § 13–497(c), the property owner or his agent (i) must be present, (ii) must authorize the tow in writing, and (iii) if he is the property owner's agent, cannot also be an employee of a towing company. Prince William County, Va., Code § 13–497(c). At the time of the stop, it is undisputed that Officer Pass knew the following:

(i) the tow truck displayed a Henry's logo;

(ii) Henry's employees had previously been charged with and convicted of illegally towing cars from private property, including convictions for towing cars when no property owner's agent was present;

(iii) the tow was in progress; and

(iv) the only persons present were sitting in the cab of the Henry's truck.

Knowledge of these facts plainly establishes reasonable articulable suspicion of a § 13–497(c) violation. Indeed, the simple observation that no person was standing outside the truck would have been sufficient to arouse suspicion that either (i) the tow was being conducted without the presence of the property owner or the property owner's agent, or (ii) even if an authorized agent were present, that the agent might also be an employee of the towing company. Henry's employees' sullied record only strengthened Officer Pass' reasonable

suspicion. Thus, the facts supported the "minimal level of objective justification" required to establish a reasonable articulable suspicion for an investigatory stop. *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581.

In response, Poole argues that, even if Officer Pass had reasonable suspicion to initiate the stop, the stop lasted for such a length of time—50–55 minutes—that it ripened into an arrest, requiring probable cause. To be sure, the Supreme Court has provided that an investigative stop may not "continue[ ] indefinitely," but it has imposed "no rigid time limitation;" rather, it has emphasized instead that when assessing whether a detention is too long in duration to be justified as an investigative stop, it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[11] In this respect, defendants contend that throughout the 55–minute detention, they were actively engaged in an ongoing investigation and thus that the length of the detention was necessary to confirm or dispel their suspicions, and therefore reasonable under *Terry.*[12] While it is unclear from the record whether the

investigation reasonably required the full 55 minutes, it is unnecessary to decide this point because even if the investigative detention ripened into a seizure requiring probable cause, by the time the stop so ripened, defendants had ample probable cause to arrest Poole for a violation of § 13–497(c).

### 2. Probable cause to arrest [13]

■■ Under what the Fourth Circuit has referred to as the minor offense doctrine, "if an officer has probable cause to believe that an individual has committed even a minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *See Figg v. Schroeder,* 312 F.3d 625, 636 (4th Cir.2002) (quoting *Atwater v. Lago Vista,* 532 U.S. 318, 333, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)) (finding no constitutional violation in jailing of seat-belt law violator); *see also* Va.Code § 18.2–81 ("[O]fficers may arrest, without a warrant, any person who commits any crime in the presence of the officer ....."). It follows that if an officer has probable cause to arrest a person for a minor offense, if the person is then detained for a period of time, there is no constitutional violation.

---

**11.** *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *see also Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the stop.").

**12.** *See, e.g., United States v. McFarley,* 991 F.2d 1188 (4th Cir.1993) (upholding 38–minute detention while waiting for dog to subject luggage to sniff); *United States v. Adams,* 1994 WL 602738, 1994 U.S. LEXIS 30761 (4th Cir.1994) (unpublished disposition) (upholding 45–minute detention to locate and bring teller to identify suspect). *But see United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding that 90–minute detention while luggage taken to nar-

cotics detection dog "preclude[d] the conclusion that the seizure was reasonable in the absence of probable cause").

**13.** While the parties dispute whether Poole was free to leave during the 50–55 minute investigation, it is necessary to take plaintiff's version of the facts as true for the purpose of this motion. Thus, it must be assumed that Poole was not permitted to leave, as she claims her driver's license was not returned, she was not permitted to use the bathroom or smoke, and when she asked whether she could leave, she was told that she could not. *See Park v. Shiflett,* 250 F.3d 843, 850 (4th Cir.2001) (noting that test for determining whether there has been an informal arrest is whether suspect's freedom of action curtailed to degree associated with formal arrest).

*See Figg,* 312 F.3d at 636–37 (upholding a detention for "a few hours" on probable cause to believe that plaintiffs had violated Virginia's obstruction of justice statute and driving under the influence law).

■ In this case, therefore, if defendants had probable cause to believe that Poole had violated § 13–497(c), and thus probable cause to arrest her for this offense, the 55–minute detention did not violate her constitutional rights. And the undisputed record facts plainly support defendants' conclusion that Poole was engaged in a tow in violation of § 13–497(c). Most significantly, by the time the investigative stop ripened into an arrest, in addition to the facts known above, defendants had also learned one additional key fact: Poole was wearing a t-shirt with the Henry's logo. Thus, probable cause was based on the following undisputed facts:

(i) Henry's employees had a record of illegally towing cars from private property;

(ii) a tow was in progress;

(iii) Poole was riding in the cab of a Henry's truck;

(iv) both persons present, including Poole, were wearing Henry's t-shirts; and

(v) Poole had no record that the car being towed had a valid parking pass.

Poole argues that she provided to Officer Pass a copy of a letter from Coverstone stating that she was Coverstone's authorized agent, and Officer Pass has conceded for the sake of argument that Poole provided written authorization for the tow to the Henry's driver. Yet, although Poole claimed to be Coverstone's agent, she oddly had no list of the cars authorized to be parked there (to prevent accidental tows of legally parked vehicles). What is more, Officer Pass had probable cause to believe that, even if Poole was an agent for Cover-

stone, she was also an agent of the towing company, *i.e.*, plaintiff could have been a paid agent of both Coverstone and Henry's, which would nonetheless constitute a violation of the ordinance. Thus, even if the investigative stop was of sufficient duration to ripen into an arrest, given the facts known to Officer Pass and the other defendants by that time, defendants had probable cause to arrest plaintiff for an illegal tow in violation of § 13–497(c). It follows that Poole did not suffer any violation of her Fourth Amendment rights, and accordingly this claim must be dismissed.

### B. Intentional Infliction of Emotional Distress

■ To establish liability for intentional infliction of emotional distress in Virginia, a plaintiff must plead and ultimately prove by clear and convincing evidence that (1) "the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe." *Russo v. White,* 241 Va. 23, 400 S.E.2d 160, 162 (1991); *Delk v. Columbia/HCA Healthcare Corp.,* 259 Va. 125, 523 S.E.2d 826, 833 (2000). This is a stringent standard and the action is generally "not favored in the law." *Russo,* 400 S.E.2d at 162. It is clear that Poole's allegations do not meet Virginia's stringent standard for establishing intentional infliction of emotional distress and thus the claim is appropriate for Rule 12(b)(6) dismissal.

■ To begin, the allegations in the complaint plainly do not satisfy the second prong of the intentional infliction of emotional distress claim, which requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Russo,* 400 S.E.2d at 162 (internal quotation marks

omitted). While the harassment Poole alleges, including defendants' suggestion that her children might be taken from her, is plainly inappropriate, even reprehensible, such harassment simply cannot be said to be beyond all possible bounds of decency or utterly intolerable.[14]

█ Nor has Poole alleged facts sufficient to establish the fourth prong of an intentional infliction of emotional distress claim: severe distress. Importantly, under Virginia law "liability arises only when . . . the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* at 163. In *Russo*, plaintiff alleged she "was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work;" even these symptoms did not amount to the severe distress required. *Id.* (internal quotation marks omitted). Poole's allegations are dramatically less severe. Poole alleges no specific evidence of severe distress, but only alleges generally "emotional trauma and emotional distress" from the actions of Officer Pass and the other officers. Thus, even if defendants' actions could be considered so outrageous as to "go beyond all possible bounds of decency," plaintiff does not allege emotional distress so severe that "no reasonable person could be expected to endure it." *Id.* at 162–63. Accordingly, this claim must be dismissed.

An appropriate Order will issue.

---

14. *See, e.g., Shiflett v. GE Fanuc Automation Corp.*, 1996 WL 481082, at * 1, 1996 U.S. Dist. LEXIS 14306, at *10 (W.D.Va.1996) (unpublished disposition) (Michael, J.) (holding that "reprehensible" insults directed at deaf person did not satisfy Virginia's stringent standard); *Simmons v. Norfolk & W.R. Co.*, 734 F.Supp. 230, 232 (W.D.Va.1990) (holding that cursing and screaming in public and being ordered from job to job to the accompaniment of cursing and shouting did not give rise to outrageousness); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").